IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AYOTUNDA LOVETT Individually And On Behalf Of All Similarly Situated Persons, | CIVIL ACTION NO. 1:14-CV-0983-WSD-JSA |
| Plaintiff, | |
| v. | |
| SJAC FULTON IND I, LLC d/b/a Zaxby's, SJAC FOOD GROUPS, LLC d/b/a Zaxby's, And DOES 1 THROUGH 10, | **NON-FINAL REPORT AND RECOMMENDATION ON A MOTION TO DISMISS AND A MOTION FOR CONDITIONAL CLASS CERTIFICATION** |
| Defendants. | |

Plaintiff Ayotunda Lovett asserts claims individually and on behalf of a putative class of allegedly similarly-situated employees and former employees of the Defendants, alleging violations of overtime pay requirements of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq* (the "FLSA"). Plaintiff Lovett also asserts individual claims for discrimination on the basis of gender and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII").

This case is before the undersigned on a variety of pretrial motions. For the reasons explained below, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Count I of Plaintiff's Complaint for Lack of Subject Matter Jurisdiction

[15] be **DENIED**, and that Plaintiff's Motion for Conditional Class Certification [14] be **GRANTED IN PART AND DENIED IN PART**.[1]

## I.   DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [15]

The basis for Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction as to Count One [15] is that "[o]n August 8, 2014, Defendants served [Named Plaintiff] Ms. Lovett and [Opt-In Plaintiff] Ms. Norman with offers of judgment pursuant to Fed.R.Civ.P. 68," each of which was "for an amount in excess of the maximum potential overtime liability to which the recipient would have been or could be awarded under the FLSA, inclusive of all damages, liquidated damages, and interest." Def. Br. [15-1] at 2-3. According to Defendants' motion, these offers mooted the Plaintiffs' overtime claim in Count One and thereby deprive the Court of subject matter jurisdiction over that claim. *Id.*

At the time of Defendants' motion, several cases stood for the proposition that offers of judgment pursuant to Rule 68 offering all possible relief would, in fact,

---

[1] The Court will separately address in a future Report and Recommendation two other dispositive motions relating specifically to Opt-In Plaintiff Ashley Greene, that is, Plaintiff's Motion to Dismiss Ms. Greene's claims [19] and Defendants' Motion for Partial Summary Judgment on those same claims [16]. The parties agree that Ms. Greene is not properly within the proposed class definition and should be dismissed from this case. The parties dispute whether that dismissal should be with, or without, prejudice.

render moot a plaintiff's claim. *See, e.g., Taylor v. CompUSA, Inc.*, No. 1:04-CV-718, 2004 WL 1660937, at *2 (N.D. Ga. July 14, 2004). During the pendency of this motion, however, the Eleventh Circuit issued its published opinion in *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698 (11th Cir. 2014). This binding authority now states that "a plaintiff's individual claim is not mooted by an unaccepted Rule 68 offer of judgment." *Id.* at 709.

The Court requested that Defendants clarify their position as to the impact of *Stein* on the Motion to Dismiss. In response, Defendants filed a supplemental brief in which Defendants made clear their view that *Stein* was wrongly decided. Def. Supp. Br. [82] at 10-13. Defendants also indicated that *Stein* may be materially distinguishable in other circumstances. Defendants, otherwise, however, concede that *Stein* binds the Court and "now appears to compel a different result" in this case, i.e., denial of their motion. *Id.* at 10. The Court appreciates counsels' candor, and independently agrees that *Stein* compels denial of the motion. Thus, it is **RECOMMENDED** that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [15] be **DENIED**.

## II.   PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION [14]

A. *Legal Standards*

An action alleging violations of the overtime pay requirements of the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action under the FLSA is "fundamentally different" from class actions under FED. R. CIV. P. 23. *Genesis Healthcare Corp. v. Symczyk*, __ U.S. __, 133 S.Ct. 1523, 1529 (2013). Among other differences, under the FLSA, a class plaintiff must affirmatively opt-in to join the lawsuit, by consenting in writing and filing that consent with the Court. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 168 (1989).

The Eleventh Circuit requires a two-stage approach to determine whether an FLSA case can be maintained as a class action. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-61 (11th Cir. 2008). In the first stage, referred to as the "notice stage," the plaintiff has the burden of showing a "reasonable basis" for his or her claim that there are other similarly situated employees. *Id.* The principal purpose of the Court's determination at this initial stage is to determine whether there is a sufficient basis to justify provision of notice to other putative class members. *Id.* The

4

Eleventh Circuit has made clear that this determination is not subject to strict review and that conditional certification at the notice stage should be fairly leniently granted:

> We have described the standard for determining similarity, at this initial stage, as "not particularly stringent," *Hipp*, 252 F.3d at 1214, "fairly lenient," *id.* at 1218, "flexib[le]," *id.* at 1219, "not heavy," *Grayson*, 79 F.3d at 1097, and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)," *id.* at 1096. In 2007, we recounted our law and noted that at the initial stage, courts apply a "fairly lenient standard." *Anderson*, 488 F.3d at 953; *see Hipp*, 252 F.3d at 1218. The district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion. Nonetheless, there must be more than "only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores." *Haynes*, 696 F.2d at 887.

*Id.* at 1260-61 (*quoting Anderson v. Cagle's Inc.*, 488 F.3d 945 (11th Cir. 2007), *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001), *Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996), and *Haynes v. Singer Co., Inc.*, 696 F.2d 884 (11th Cir. 1983)); *see also Kreher v. City of Atlanta, Ga.*, No. 1:04-CV-2651-WSD, 2006 WL 739572, at *3 (Mar. 20, 2006 N.D. Ga.) ("Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.")

This lenient standard contrasts with that applied in the second stage, which is triggered by an employer's motion for decertification. *See Morgan*, 551 F.3d at 1261. At that point, because a more complete factual record exists, the Court can make a

5

more informed factual determination of similarity. Thus, a Plaintiff bears a heavier burden to justify the continued maintenance of a collective action in the face of a Defendant's motion to de-certify. *Id*.

At this juncture, Plaintiff is seeking conditional certification at the first, or "notice" stage. Thus, the Court looks to Plaintiff's showing of specific factual evidence to see whether a "reasonable basis" exists to justify conditional certification and class notification.

B. *Facts Relating To Conditional Certification*

1. Plaintiffs' Evidentiary Showing

Defendants owned and operated approximately six or seven Zaxby's restaurants in the Atlanta area during the relevant period of this lawsuit. *See* Declaration of Ayotunda Lovett [14-2] ("Lovett Decl.") ¶ 7; Declaration of Tishunda Norman [14-3] ("Norman Decl.") ¶ 7. Plaintiff Lovett – the named Plaintiff – began working for Defendants on or about May 3, 2010 as an Assistant Manager. Lovett Decl. ¶ 5. Plaintiff Norman – a putative Plaintiff who has filed an Opt-In Notice – also began working for Defendants in May 2010 and served as an Assistant Manager during the majority of her employment. Norman Decl. ¶¶ 5, 6. Currently, the case includes another Opt-In Plaintiff, Ashley Greene, who began working for Defendants in 2010 and at some point during her employment was promoted to the position of

6

Shift Supervisor, which is below the Assistant Manager position. Declaration of Ashley Greene, [14-4] ("Greene Decl.") ¶¶ 5, 6.

Plaintiffs state that Assistant Managers employed by Defendants were "interchangeably assigned" to work at various restaurants for varied durations. *See* Lovett Decl. ¶ 8; Norman Decl. ¶ 8. During the course of their employment, Lovett and Norman were assigned as needed at various restaurants owned and managed by Defendants; Lovett worked in five separate restaurants and Norman worked in three separate ones. *See* Lovett Decl. ¶ 9; Norman Decl. ¶ 9. Shift Supervisors were also interchangeably assigned, and Plaintiff Greene worked at five separate restaurants. *See* Greene Decl. ¶¶ 14, 15.

Assistant Managers had similar training, similar duties from restaurant to restaurant, and wore the same uniforms. *See* Lovett Decl. ¶¶ 11, 14. For example, Assistant Managers all were required to have "ServSafe" certification for safe food handling practices and to have attended "Zaxby's Chicken University" for detailed instruction on the policies and procedures in Zaxby's Operations Manuals. *See* Lovett Decl. ¶¶ 12, 14, Norman Decl. ¶¶ 15, 17.[2]

---

[2] As a practical matter, Plaintiffs state that the Zaxby's Chicken University was not consistently enforced, and so not all Assistant Managers actually received this certificate. *See* Lovett Decl. ¶ 15, Norman Decl. ¶ 18.

During their training, Plaintiffs were all advised that they were to strictly follow Zaxby's Operations Manuals in performing their tasks so that customers would have the same experience at any Zaxby's restaurant in the country. *See* Lovett Decl. ¶ 25, Norman Decl. ¶ 23, Greene Decl. ¶ 25. These manuals provided all of the policies, procedures and details needed for Assistant Managers and Shift Supervisors, and other employees, to fulfill their duties. *See* Lovett Decl. ¶ 18, Norman Decl. ¶ 21. According to Plaintiffs, they exercised no discretion or judgment in performing their duties but rather simply followed the instructions in the Operations Manuals. Lovett Decl. ¶ 28, Norman Decl. ¶ 12.

Plaintiffs describe their primary duties – and that of all Assistant Managers that they have observed – as "(a) to prepare and cook the food, (b) to serve the customers, and (c) to keep the restaurant clean." Lovett Decl. ¶¶ 16, 17, Norman Decl. ¶¶ 18, 20, Greene Decl. ¶¶ 17, 18.

During their employment, Plaintiffs observed numerous other Assistant Managers and Shift Supervisors who worked over 40 hours per week in many work weeks. *See* Lovett Decl. ¶ 33, Norman Decl. ¶ 33, Greene Decl. ¶ 32. Plaintiffs regularly worked more than 40 hours per week. Lovett Dec. ¶ 30 Norman Decl. ¶ 30, Greene Decl. ¶ 29. Plaintiffs attest that they were denied time-and-a-half overtime pay for their work over 40 hours per week, and that Defendants treated them improperly

8

as exempt from the FLSA overtime pay requirement. Lovett Decl. ¶¶ 31-32, Norman Decl. ¶ 31-32, Greene Decl. ¶ 30-31.[3]

Defendants do not dispute that Assistant Managers receive only a set salary of $455 per week for all hours worked and do not receive overtime. *See* Def. Br. [20] at 9. Rather, Defendants' position is that Assistant Managers are exempt from the FLSA's overtime requirements and are accurately classified as such. *Id.*

In an interesting development, after briefing was complete with regard to this motion, Plaintiff Lovett submitted a second declaration, specifically in opposition to Defendants' Motion to Dismiss Count I for Lack of Subject Matter Jurisdiction. *See* [21-1] ("Lovett Sec. Decl."). In this declaration, Plaintiff Lovett attested that she had an oral agreement with her General Manager, by which she was to be paid a salary for 45 hours per week, and that she would be paid overtime for work in excess of 45 hours in any given week. *See id.* ¶¶ 7-9. No evidence was submitted showing that any other Assistant Manager was subject to this apparently anecdotal employment arrangement.

_____

[3] Plaintiff Greene now withdraws this claim as to herself, however, based on records produced by Defendants after the filing of her Opt-In notice and her declaration in support of conditional class certification that show she was treated as non-exempt and therefore was paid overtime. *See* Pl. Reply [29] at 1-2.

2.  Defendants' Evidentiary Showing

Defendants have submitted various Declarations from supervisors and co-workers of Plaintiffs that dispute Plaintiffs' characterizations of their job responsibilities. For example, Defendants introduce evidence that Assistant Managers possess authority to hire and fire employees, *see* Stalling Sec. Decl. ¶ 6, which Plaintiffs specifically dispute, *see* Lovett Decl. ¶ 27, Norman Decl. ¶ 11. Defendants' witnesses also explain the Assistant Manager position as one that involves significant management of personnel and operations. Stalling Sec. Decl. ¶ 5. Indeed, because the single General Manager assigned to a restaurant cannot be present in the restaurant every hour of every day, Assistant Managers routinely work unsupervised and have ultimate management authority over their restaurant during their shift. *See* Lawson Decl. ¶ 4.

Because of the discretion entrusted to Assistant Managers, according to Defendants, the day-to-day work of any particular Assistant Manager may vary significantly from another. For example, according to Defendants, some Assistant Managers are more involved than others in hiring *See* Stalling Sec. Decl. ¶ 6. Also, "[s]ome Assistant Managers may spend only 5 to 10% of their work day performing [basic, low-skilled] duties alongside Crew Members, while others may spend more because they prefer a hands-on training/management style." *See* Def. Br. [20] at 8

10

(citing authority). Defendants state that because of the managerial nature of the position, Assistant Managers are classified as exempt under the FLSA and do not record their hours worked. *See* Stalling Sec. Decl. ¶ 8.

Defendants have submitted sworn testimony that, unlike Assistant Managers, Shift Supervisors such as Plaintiff Greene are classified as non-exempt, are required to record their hours worked, and are paid overtime pay in accordance with the FLSA. *See* Stalling Sec. Decl. ¶ 9. Shift Supervisors are supervised by Assistant Managers and not granted the same operational and personnel management authority. *Id.* ¶ 10.

    C. *Analysis*

      1. Assistant Managers

        (a)    Similarity

At the outset, the Court is confronted with somewhat conflicting evidence between the parties as to the nature of the Assistant Manager position. Clearly, however, the Court at the notice stage must defer heavily to the facts submitted by the Plaintiffs and resolve every conflict and draw every inference in Plaintiffs' favor. Indeed, numerous district courts have held that courts need not consider an employer's evidence at the notice stage at all. *See, e.g., Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 628 (E.D. Cal. 2009).

Plaintiffs' declarations describe their duties and those of all other Assistant Managers whom they observed as "(a) to prepare and cook the food, (b) to serve the customers, and (c) to keep the restaurant clean." Plaintiffs explain that to perform these duties as Assistant Managers they were trained to strictly follow a uniform set of "Operations Manuals" that specifically outlined how they were to cut, season, label and cut the food, what language they were supposed to use in interacting with customers, what cleaning products to use, and other details.

Plaintiffs' declarations do not clearly or in any detail explain what specifically an Assistant Manager does to accomplish these tasks and how the Assistant Manager position relates to the variety of waiters, cooks, and other staff working at the restaurant. Presumably, all of these workers, and anyone generally working in a restaurant, share the same overall mission of "preparing and cooking the food, serving the customers, and keeping the restaurant clean." The only specific duties mentioned in Plaintiffs' declarations are manual in nature – such as personally cutting vegetables themselves – but Plaintiffs do not clearly claim that no part of their job involves supervising others in accomplishing these tasks. The extent to which the job involves managing others as opposed to personally engaging in manual tasks appears likely to be a major issue to be disputed on the merits.

Nevertheless, Plaintiffs are clear that their day-to-day duties – whether those involved personally cutting vegetables or supervising others in doing so – were strictly defined by Operations Manuals that applied to all of Defendants' restaurants, and Plaintiffs claim that they could not exercise any discretion or judgment on material matters. *See, e.g.,* Lovett Decl. ¶ 28. In other words, according to Plaintiffs, all Assistant Managers in Defendants' employ looked to one uniform set of rules to exactly govern what they did. Plaintiffs also show that the training and certification requirements for Assistant Managers employed by the Defendants were the same. While the Court finds that Plaintiffs' evidentiary showing is vague in a number of ways, these assertions as to uniform training and rules governing duties are at least minimally sufficient under the "fairly lenient" standard applicable at the notice stage to show that other Assistant Managers were similarly situated to Plaintiffs Lovett and Norman.

Indeed, that Defendants' Assistant Managers shared some core similarities in job responsibilities can be inferred from the fact – attested to by Plaintiff and not specifically disputed by Defendants – that Defendants assigned its Assistant Managers interchangeably among restaurants as staffing needs dictated. If the job roles and training of different Assistant Managers at different restaurants differed significantly, one would not expect them to be staffed so fungibly.

13

While Defendants' declarations paint a very different picture of the level of managerial discretion vested in the Assistant Manager position, Defendants do not explain how the job requirements or qualifications differed significantly among restaurants or among individuals holding that title. According to Defendants, *all* Assistant Managers were primarily managers, exercised discretion and were authorized to and frequently did manage the entire operations of the restaurant (for example, when the General Manager was absent). While the daily work might vary from one Assistant Manager to another based on how they chose to exercise their managerial discretion – or based on the particular needs of the restaurant on given days – there remains a core similarity even under Defendants' theory in terms of the overall expectations of Assistant Managers.

Plaintiff Lovett's new declaration as to her specific salary agreement complicates resolution of this motion. Defendants argue that Lovett has essentially "morphed" her claim into one for breach of contract, in which she sues to enforce this alleged oral agreement for overtime pay in excess of 45 hours per week. *See* Def. Suppl. Br. [82] at 2-3. Because no other Assistant Manager asserts such a breach claim – or can make any other claim related to an employment agreement entitling them to overtime – Defendants argue that Lovett cannot be seen as "similarly situated" to any other class member. Defendants further argue that – even if Lovett

14

were only asserting FLSA claims – she cannot meet her burden to show substantial similarity given that she claims that she is subject to a pay practice entirely unique to her.

This new declaration clearly does not help Plaintiffs' cause as it relates to this Motion. But the Court cannot say that it should defeat at least conditional class certification under the "fairly lenient" standard. First, the Court disagrees with Defendants' characterization that this fact "morphs" Lovett's claim into one for breach of contract. Lovett, at least currently, does not seek to enforce this contract and does not argue that her entitlement to overtime pay derives from this contract. Rather, Lovett argues that she is entitled to overtime as a worker who should have been classified as non-exempt under the FLSA.

Second, neither side argues that the alleged existence of this contract impacts the merits of Lovett's argument that she and all other Assistant Managers were mis-classified as exempt. Indeed, the courts have made clear that employees cannot contract out of their right to overtime pay under the FLSA. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). Further, "[a]n employer may provide an exempt employee with additional compensation without losing the exemption." 29 C.F.R. § 541.604(a). These principles appear to limit any relevance that Lovett's alleged conversation with her General Manager may offer either side,

at least to the core liability issues of this case. Therefore, the only specific issue identified by the parties to which this contract relates is the calculation of damages owed to Plaintiff Lovett, specifically, the number of overtime hours to be applied at a half-time rate versus a time-and-a-half rate. *See* Pl. Supp. Br. [83] at 4 n. 1.

Many courts have found that issues largely related to individual calculations of damages do not preclude certification at the notice stage, where a unifying theory of liability is established. *See, e.g., Davis Soc. Serv. Coordinators, Inc.* No. 1:10-CV-2372, 2012 WL 5361746, at *24 (E.D. Cal. Oct. 30, 2012). More broadly, courts have typically declined to consider individualized facts relating to employees' claims as precluding notice certification, where there is a reasonable basis that the proposed class as a whole shares threshold common similarities. *See, e.g., Kreher*, 2006 WL 739572, *3-4 (Plaintiffs established minimal facts justifying notice certification even though allegations that they worked "off the clock" implicated individualized inquiries; those issues were to be considered in more depth at the de-certification stage).

That Plaintiff Lovett's case may involve certain unique damages issues is a factor that can again be argued in the de-certification stage. Indeed, Plaintiff has submitted authority for the proposition that individualized damages questions alone are irrelevant to the similarly-situated inquiry at any stage. *See* Pl. Suppl. Br. [83] at

16

6. The Court need not consider that argument at this juncture, and Defendants have not had the opportunity to respond. All that is necessary for purposes of this motion is that Assistant Managers share basic job responsibilities material to whether they were properly classified as exempt, such that Plaintiffs have met their low burden to prevail at the notice stage.

(b)    Opt-In Interest

In addition to substantial similarity, Plaintiffs must show a reasonable basis to conclude that other employees will choose to opt-in. *See Haynes v. Singer Co. Inc.*, 696 F.2d 884, 887 (11th Cir.1983). This burden is not onerous, however. *See Alequin v. Darden Rests., Inc.*, No. 12–61742–CIV, 2013 WL 3939373, at *4 (S.D. Fla. July 12, 2013). "Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees." *Rodgers v. CVS Pharmacy, Inc.*, No. 8:05–CV770T–27MSS, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2006) (citing *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp .2d 1272, 1277 (M.D. Ala. 2004)). In making this showing, a plaintiff cannot rely on speculative, vague, or conclusory allegations. *Id.* Instead, the plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson*, 79 F.3d at 1097 (internal quotations and citation omitted).

17

Indeed, a "plaintiff must proffer a minimum quantum of evidence to warrant the creation of a collective [action]. The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself." *Guerra v. Big Johnson Concrete Pumping, Inc*., No. 05–14237–CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006).

Defendants argue that Plaintiffs have not shown sufficient interest among other Assistant Managers to justify conditional certification. Only one other Assistant Manager has opted-in, Plaintiff Norman, and one other Shift Supervisor, Plaintiff Greene. Defendants have also filed declarations from thirteen currently-employed Assistant Managers and four Shift Supervisors who attest that they will not opt-in. Def. Br. [20-1].

District courts have taken differing approaches to judging whether a Plaintiff had shown minimally sufficient evidence warranting a collective action. In *Guerra*, the district court found that even a single affidavit from one potential class member expressing an interest in opting in "rais[ed] the Plaintiff's contention beyond one of pure speculation," thus justifying conditional certification. *See Guerra*, 2006 WL 2290512, at *4. Other courts have denied class certification where only 1-2 other individuals showed interest by opting in for filing an affidavit. *See White v. Kcpar, Inc.*, No. 6:05-CV-1317-Orl-22DAB, 2006 WL 1722348, at *3 (M.D. Fla. June 20,

2006). Reflecting the highly fact-specific nature of the inquiry, some courts have considered not just the absolute number of individuals who have expressed an interest in opting in but have also considered the percentage that number reflects of all total potential class members. *See Rodgers*, 2006 WL 752831, at *4 (single named plaintiff was not able to show sufficient interest based only on affidavits of interest by two other potential class members, compared to the approximately 250,000 workers employed at the over 5,000 stores operated by the defendants during the time period of the allegations).

Here, Plaintiff does not make an overwhelming showing of interest. But only a minimal showing is required, and at this juncture the Court finds that Plaintiff has satisfied that low standard. Plaintiff has shown that two other individuals – one Assistant Manager and one Shift Supervisor – have opted in, before any collective action notice. While Greene now wishes to withdraw, that does not appear to reflect a lack of interest but rather a recognition that she falls outside the class because she was, in fact, properly classified as non-exempt. Indeed, Greene resists dismissal with prejudice, suggesting that she is still interested in potentially pursuing overtime claims on a theory other than a mis-classification theory. Unlike in *Rodgers*, moreover, these two individuals are not compared against a potential class of hundreds of thousands of plaintiffs. According to the Complaint, Defendants have

19

operated seven Zaxby's restaurants during the relevant time period. Complaint [1] ¶¶ 8, 10. While the parties do not offer details as to the size of the potential plaintiff pool, logic suggests that it is not nearly as extensive as in *Rodgers*. This evidence is minimally sufficient to establish a reasonable belief that some additional individuals will opt in upon receiving notice of the lawsuit.[4]

Thus, the Court **RECOMMENDS** that Plaintiff's Motion [14] be **GRANTED** insofar as it requests conditional certification of a collective action in favor of all Assistant Managers (including former Assistant Managers or individuals who held the prior title, "managers" (except not including excluding General Managers)) who work or worked for Defendants during the time period requested.

2. Shift Supervisors

Originally, Plaintiff sought to include all Shift Supervisors in the collective action. However, Defendants have since introduced evidence, which Plaintiffs do not

---

[4] The Court considers Defendants' affidavits of current employees, but finds those of minimal weight at least at this juncture. At this lenient stage in the proceedings, the Court is required to make all inferences in Plaintiffs' favor. As a result, and without casting any aspersions at all, the Court must consider the unique posture of a current employee assuring his or her employer that he or she will not join this lawsuit, and must interpret those statements to be of minimal value in determining what former employees such as Ms. Norman and Ms. Lovett may choose to do.

contest at least for purposes of this Motion, that Shift Supervisor/Opt-In Plaintiff Greene was classified as non-exempt. Defendants attest that Shift Managers as a group are classified as non-exempt, are required to record their hours, and are eligible for overtime pay for hours worked in excess of 40 hours per week. *See* Stalling Sec. Decl. ¶ 9. Plaintiffs do not appear to concede this point, but do not appear to contest it either. Plaintiffs rather wish to "refine[]" their class definition to only include Shift Supervisors "to the extent" that Defendants classified any as exempt, without offering any evidence that Defendants did so. *See* Pl. Reply Br. [29] at 1 n.2.

While the standard at the notice stage is fairly lenient, the Court is not to be a rubber stamp. It remains Plaintiffs' burden to show at least a reasonable basis to believe that specific categories of putative class members are similarly-situated. Here, Plaintiffs offer no evidence to establish that any Shift Supervisors were classified as exempt, leaving uncontested Defendants' evidence that Shift Supervisors were classified as non-exempt. As non-exempt employees, Shift Supervisors would not be similarly-situated to Plaintiffs Norman and Lovett, and Plaintiffs concede that they would fall outside the proposed class definition.

Plaintiffs request to include Shift Supervisors "to the extent" any of them were classified as exempt, without offering the Court any reason to believe that this definition actually applies to anyone. Plaintiffs' speculation that some Shift

21

Supervisors may have been mis-classified is insufficient, even at the notice stage. Plaintiffs complain that they formulated this proposed definition without the benefit of discovery. The lack of discovery at the notice stage is a major reason why the Courts apply such a lenient standard. But notwithstanding the lack of discovery, Plaintiffs must establish similarity based on more than mere allegations, speculation, and hope that discovery will reveal Defendants' affidavits to be inaccurate.

For these reasons, the Court **RECOMMENDS** that Plaintiff's Motion [14] be **DENIED** insofar as it seeks conditional certification of Shift Supervisors.

3.  Logistics

Plaintiffs request that the Court permit any notice to be emailed as well as transmitted by regular mail, and that a reminder postcard be permitted at the halfway point in the notice period. Plaintiffs also request limited discovery of names, addresses, email addresses and telephone numbers, and other information relating to putative class members and the stores at which they worked. *See* Pl. Br. [14-1] at 19-23. Defendants do not oppose these requests and the Court does not find them to be unreasonable on their face. Thus, the Court **RECOMMENDS** that notice be permitted by way of electronic mail and that a reminder postcard be allowed. The Court **ORDERS** that Plaintiffs prepare a proposed order for the benefit of the District

22

Judge to govern the logistics and scheduling of the notice, in the event that these recommendations are adopted.

The Court further **ORDERS** that the class-related discovery requested by Plaintiffs in their brief be allowed as that discovery relates to Assistant Managers and former Assistant Managers (including those employed under the prior title, "managers," which does not include "General Managers")[5]. To the extent that any specific disputes over those matters arise, including as to timing, the parties should jointly call the Chambers of the undersigned as with any discovery dispute. The undersigned is ordering discovery of this information to occur now, so that if the undersigned's recommendations are adopted, notice can be accomplished promptly.

## III.   CONCLUSION

The Court **RECOMMENDS** that Defendants' Motion to Dismiss for Lack of Jurisdiction [15] be **DENIED**, and that Plaintiff's Motion for Conditional Class Certification [14] be **GRANTED IN PART AND DENIED IN PART** as explained further above.

---

[5] For the reasons discussed above, there is no need for this discovery to include Shift Supervisors or former Shift Supervisors.

23

The Court **ORDERS** that class-related discovery be permitted as explained further above, and that the Plaintiff prepare a proposed order as to the logistics and timing of class notice.

**IT IS SO ORDERED** this 23rd day of March, 2015.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE