## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**AYOTUNDA LOVETT, individually**
**and on behalf of all similarly situated**
**persons,**

                **Plaintiff,**

**v.**

**1:14-cv-983-WSD**

**SJAC FULTON IND I, LLC d/b/a**
**Zaxby's, SJAC FOOD GROUPS,**
**LLC d/b/a Zaxby's, and DOES 1**
**THROUGH 10,**

                **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants SJAC Fulton Ind I, LLC

("SJAC Fulton Ind I") and SJAC Food Groups, LLC's ("SJAC Food Groups")

(together, "Defendants") Objections [128] to Magistrate Judge Justin S. Anand's

Non-Final Reports and Recommendations, issued on March 23, 2015

("March 23rd R&R") [103], and April 28, 2015 ("April 28th R&R") [118].

In his March 23rd R&R, the Magistrate Judge recommends that Defendants'

Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss") [15] be denied,

and that Plaintiff Ayotunda Lovett's ("Plaintiff" or "Lovett") Motion for

Conditional Class Certification [14] be granted in part and denied in part.

In his April 28th R&R, the Magistrate Judge considers Defendants' "Motion for Reconsideration of Report and Recommendation on Motion for Conditional Class Certification or, in the Alternative, Motion to Decertify Class" [107].  The Magistrate Judge (i) denied Defendants' Motion to the extent it seeks reconsideration of the March 23rd R&R, and (ii) recommends that Defendants' Motion, to the extent it seeks decertification, be denied without prejudice.

Also before the Court is the Magistrate Judge's April 10, 2015, Non-Final Report and Recommendation ("April 10th R&R") [113], which recommends that Plaintiff's Motion to Dismiss Opt-in Plaintiff Ashley Greene ("Motion for Voluntary Dismissal") [19] be granted, that her claim be dismissed without prejudice, that Defendants be awarded reasonable costs incurred in defending against Greene's claim, and that Defendants' Motion for Partial Summary Judgment [16] on Greene's claim be denied as moot.  Although the parties do not object to the April 10th R&R, Plaintiff has filed a Motion to Strike [123] Defendants' Bill of Costs [121].

## I.    BACKGROUND

This is a putative collective action brought by Plaintiff against Defendants, who own and operate various Zaxby's fast-food restaurants in the Atlanta, Georgia, area.  Plaintiff claims that Defendants misclassified its Assistant Managers,

including Plaintiff, and Shift Supervisors as "exempt" employees, and, as a result, failed to pay overtime compensation to Plaintiff for hours worked in excess of forty (40) hours per week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.[1]

A.    Facts

Plaintiff seeks to conditionally certify a class consisting of "all current or former 'Assistant Managers' or former 'managers' (not 'General Manager') [sic]," and including Shift Supervisors, "whom Defendants classified as exempt, over the past three years."  (Pl's Reply at 11).  Plaintiff relies on her declaration, and the declarations of Opt-in Plaintiffs Tishuna Norman ("Norman") and Ashley Greene ("Greene"), to support that she is similarly situated to the employees who Plaintiff claims are categorically misclassified as "exempt" employees, who did not receive overtime pay as required by the FLSA.  Defendants oppose conditional certification and, in support of their opposition, submit the declarations of Tracey Stalling, Chief Financial Officer for STL Management Company, Inc., which provides management services for Defendants, and declarations from thirteen (13) Assistant Managers currently employed by Defendants ("Current Assistant

---

[1]      Plaintiff also asserts claims, in her individual capacity, for retaliation and sex discrimination, under Title VII of the Civil Rights Act of 1964.  These claims are not the subject of any current motion.

Managers").  Defendants argue this declaration evidence shows that Plaintiff did not meet her burden to show she is similarly situated to other Assistant Managers and Shift Supervisors and thus the Court should not conditionally certify the class Plaintiff seeks to represent.

1.   <u>Defendants and their locations</u>

Plaintiff asserts that "Defendants owned and operated six or seven Zaxby's restaurants" in Georgia and that "Defendants' common management interchangeably assigned [her] to work at the[ir] various [ ] restaurants" located at: 5350 Cambelton-Fairburn Road, Fairburn ("Fairburn Restaurant"); 2530 Flat Shoals Road, College Park ("College Park Restaurant"); 925 Camp Fulton Parkway, Atlanta ("Camp Fulton Restaurant"); 7541 Highway 85, Riverdale ("Riverdale Restaurant"); 7149 Mount Zion Boulevard, Jonesboro ("Jonesboro Restaurant"); and 5201 South Cobb Drive, Smyrna ("Smyrna Restaurant") (collectively, the "Restaurants").[2]

It appears that each of the Restaurants is owned and operated by a separate legal entity, although it also appears that Sterling Coleman, who is not named as a defendant in this action, is the sole member of each entity.  Defendant SJAC

---

[2]     It appears that a seventh restaurant, located on Ponce De Leon Avenue in Atlanta ("Ponce Restaurant") is also in Defendants' alleged "restaurant group," although Plaintiff does not assert that she worked at that location and it is not clear whether the Ponce Restaurant was open during Plaintiff's employment.

4

Fulton Ind I owns and operates the Camp Fulton Restaurant.  (First Stalling Decl. [15.2] ¶ 2).  Defendant SJAC Food Groups owns and operates the Smyrna Restaurant.  (Id.).

Plaintiff also names as defendants "Does 1 through 10," which, she asserts, "either separately or jointly, own and operate approximately six other Zaxby's franchise restaurants where members of the putative class work or have worked within the past three years," and "were organized by and have the same owners as Defendants SJAC Fulton Ind I, LLC and SJAC Food Groups, LLC."  (Compl. [1] at ¶¶ 10-11).  Plaintiff has not filed a motion to join, or to amend her complaint, to identify the Doe Defendants.  She does not distinguish between the named Defendants and the Doe Defendants, instead referring to "Defendants" generally.[3]

2.     Plaintiff's testimony

From May 3, 2010 to May 2012, Plaintiff was employed as an Assistant Manager and worked at the Fairburn, College Park, Camp Fulton, Riverdale, Jonesboro, and Smyrna Restaurants.  She asserts that "Defendants' common management interchangeably assigned [her] to work at the various Zaxby's

---

[3]     In her Complaint, Plaintiff claims that Defendants SJAC Fulton Ind I and SJAC Food Groups "either jointly or separately, owned and operated [the Fairburn Restaurant]."  (Compl. ¶ 8).  Defendants assert, and Plaintiff's pay stubs support, that SJAC South Fulton I, LLC ("SJAC South Fulton") owns and operates the Fairburn Restaurant, the location at which Plaintiff worked and where her FLSA claims are not barred by the statute of limitations.  (Ans. [4] at ¶ 8).

restaurants owned by Defendants, as needed, for varied periods of time." (First

Lovett Decl. ¶¶ 5, 8-9). From January 2011 through May 2012, Plaintiff worked

only at the Fairburn Restaurant. (Id. ¶ 10).

Plaintiff asserts that, as an Assistant Manager, her "primary job duties were:

(a) to prepare and cook the food, (b) to serve customers, and (c) to keep the

restaurant clean." (Id. ¶ 16). Plaintiff "observed that all the primary duties of all

Assistant Managers and Shift Supervisors required them to [perform these same

duties]." (Id. ¶ 17). Plaintiff "relied exclusively on Zaxby's Operations Manuals,

which outlined all of the procedures and details needed to perform these

standardized manual tasks." (Id. ¶ 18). For example, Plaintiff seasoned and

cooked chicken, cut vegetables to a specific size, made salads, and labeled food, all

according to the recipes and procedures outlined in the manuals. (Id. ¶ 19). The

manuals also explained how to interact with customers and how to clean the

restaurant. (Id. ¶ 21).

Plaintiff states that she "spent the majority of [her] time performing these

primary duties," that she "performed these same duties at the other Zaxby's

restaurants in Defendants' restaurant group, and [her] primary duties did not

change in any material way over the course of [her] employment, regardless of the

Zaxby's location in which Defendants assigned [her] to work." (Id. ¶ 23). Plaintiff

"did not manage any of the restaurants in Defendants' restaurant group," she "was not authorized to, nor did [she] ever hire or fire employees on behalf of Defendants," and her "duties did not include the exercise of discretion and independent judgment."  (Id. ¶¶ 26-28).  "Virtually all of the duties [Plaintiff] performed were strictly governed by the policies and procedures contained in Defendants' various manuals, and [Plaintiff] lacked the discretion to vary from these procedures and policies in performing [her] duties."  (Id. ¶ 29).

Plaintiff asserts that, although she "worked overtime hours many weeks of [her] employment, Defendants did not pay [her] an overtime premium" "because Defendants uniformly classified their Assistant Manager position as 'exempt' from federal overtime requirements."  (Id. ¶¶ 31-32).  Plaintiff claims: "During my employment, I personally observed that there were numerous similarly situated Assistant Managers (and/or Shift Supervisors) who: (a) performed the same or similar job duties that I performed; (b) were paid a salary; (c) worked over 40 hours in many workweeks; and (d) were not paid an overtime premium due to Defendants' uniform misclassification."  (Id. ¶ 33).

### 3.    Norman's Testimony

Norman "began working for Defendants in May 2010 and resigned in January 2013."  (Norman Decl. [14.3] ¶ 5).  She states that "[d]uring *most* of [her]

employment, [she] was an Assistant Manager," that "Defendants' common management interchangeably assigned [her], as needed, to work at the various Zaxby's restaurants in Defendants' restaurant group," and that she worked at the College Park, Camp Fulton and Smyrna Restaurants.  (Id. ¶¶ 6, 8-9) (emphasis added).  Norman does not identify when, or in what position, she worked at each Restaurant.  The evidence submitted by Defendants shows that, from April 9, 2011, through July 2, 2012, Norman worked as an Assistant Manager at only the Camp Fulton Restaurant.  (First Stalling Decl. ¶¶ 5-6 & Ex. 2 [15.2 at 35-87]).  After July 2, 2012, Norman worked as an hourly, non-exempt "Cashier/Cook," at the College Park Restaurant.  (Id.).

Although it is not always clear whether she is describing the duties she performed as an Assistant Manager or a "Cashier/Cook," Norman states that she "did not manage any of the restaurants in Defendants' restaurant group," she was not authorized to hire or fire employees, and her "primary job duties were: (a) to prepare and cook the food, (b) to serve the customers, and (c) to keep the restaurant clean."  (Id. ¶¶ 10-11, 19).  Norman asserts that "[v]irtually all of the duties that [she] performed as an Assistant Manager were governed by the policies and procedures set forth in Defendants' various manuals" and she "lacked discretion to vary from these policies and procedures in performing [her] job duties."  (Id. ¶ 13).

8

Norman claims that "[t]hroughout [her] employment, [she] regularly worked over 40 hours per week," but "Defendants did not pay [her] an overtime premium for [her] overtime hours" "because Defendants uniformly classified their assistant manager position as 'exempt' from federal overtime requirements."  (Id. ¶¶ 30-32).

        4.   Greene's Testimony

In the summer of 2010, Greene began working for Defendants as a Crew Member.  (Greene Decl. [14.4] ¶¶ 5-6).  From December 26, 2011, to July 2, 2012, Greene worked as a Shift Supervisor.  (Id.; First Stalling Decl. ¶ 7 & Ex. 3). Greene worked at the Fairburn, College Park, Camp Fulton, Riverdale, and Jonesboro Restaurants, although from January 2011 through January 2012, she worked at only the Fairburn Restaurant.  (Greene Decl. ¶¶ 15-16).

Greene states that the Shift Supervisor and Assistant Manager positions were "essentially the same.  Employees in those positions had similar training and similar job duties," and [t]here was no material difference between the two positions."  (Id. ¶ 7).  "As a Shift Supervisor, [her] primary duties were: (a) to prepare and cook the food; (b) to serve the customers; and (c) to keep the restaurant clean," and, "like the Assistant Managers, [Greene] relied exclusively on Zaxby's Operations Manuals to perform these duties."  (Id. ¶¶ 17, 19).  Greene states that she "did not ever manage any of the restaurants in Defendants'

restaurant group" and she was not authorized to hire or fire employees.  (Id. ¶¶ 26-27).

Greene asserts that, although she regularly worked over forty hours per week, "Defendants did not pay [her] an overtime premium for all of [her] overtime hours, particularly when [she] was a Shift Supervisor."  (Id. ¶¶ 29-30).  Greene does not claim that she, or other Shift Supervisors, were paid a salary or misclassified as exempt.  The evidence submitted by Defendants shows that throughout her employment, including as a Shift Supervisor, Greene was paid as an hourly wage employee and she was classified as non-exempt.  (First Stalling Decl. ¶¶ 7 & Ex. 2).

>           5.   Stalling's Testimony

Stalling is the Chief Financial Officer for STL Management Company, Inc., which provides management services for certain companies that own Zaxby's franchises, including Defendant SJAC Fulton Ind I and Defendant SJAC Food Groups.  (Second Stalling Decl. [20.3] ¶ 2).  Stalling testified, based on her personal knowledge, about the job descriptions, duties, classifications and compensation for Assistant Managers and Shift Supervisors.  (Id. ¶ 3).[4]

---

[4]      It appears that "Shift Supervisor" and "Shift Manager" are different names for the same position.

Stalling states that each restaurant typically employs one General Manager, who has ultimate authority over the restaurant when he or she is working his or her shift.  (Id. ¶ 4).  Assistant Managers report directly to the restaurant's General Manager.  (Id.).  Assistant Managers "are expected to be able to manage the restaurant" and "frequently, even when the General Manager is present, manages the shifts at the restaurant," which includes "managing operations, including controlling costs and inventory and providing quality control, as well as managing personnel, including directing the work of Shift Managers and Crew Members and providing training."  (Id. ¶ 5).  Assistant Managers have the authority to make hiring and firing decisions "subject to the hiring and termination policies in place at each restaurant."  (Id. ¶ 6).  The scope of this authority, whether and how it is exercised, varies among restaurants and individual Assistant Managers.  (Id.).

According to Stalling, "[m]ost Assistant Managers will spend a small portion of their work day, subject to their own discretion, performing duties alongside Crew Members," including "running a cash-register, operating a drive-thru window and preparing food."  (Id. ¶ 7).  The amount of time an Assistant Manager spends performing these "'Crew Member duties' depends on the Assistant Manager's management style."  (Id.).  Some Assistant Managers spend only 5-10% of their work day performing these "Crew Member duties,"

while others may spend more time if they prefer a "hands-on training/management style."  (Id.).

Each restaurant classifies its Assistant Managers as exempt from the overtime provisions of the FLSA.  Assistant Managers are paid a salary, are not required to record their hours worked, and earn the same gross pay each pay period, excluding bonuses, regardless of how many hours they work per week.  (Id. ¶ 9).

Restaurants also employ hourly, non-exempt Shift Managers, also called "Third Assistant Managers," who are supervised by Assistant Managers.  (Id. ¶¶ 9-10).  Shift Managers "focus on working along-side Crew Members while actively coaching those Crew Members on proper procedures" and "assist Crew members with completing their online training modules."  (Id.).  Shift Managers do not manage the operations of the restaurant and do not have the authority to hire or fire other employees.  (Id.).  Stalling also states that, during Greene's employment as a Shift Supervisor, Plaintiff was Greene's supervisor.  (Id. ¶ 11).

6.   Current Assistant Managers' Testimony

Defendants submitted declarations from thirteen (13) Current Assistant Managers employed at the various Restaurants, some of whom have worked at more than one of the Restaurants.  The Current Assistant Managers state that they

are paid a salary for all hours worked and that they do not wish to join this collective action.  The Current Assistant Managers state that their job duties include coaching, training, and supervising Crew Members in the performance of their job duties (Armstrong Decl. ¶ 5; Borden Decl. ¶¶ 3, 5; Burden Decl. ¶ 5; Fike Decl. ¶¶ 4, 8; Gooding Decl. ¶¶ 3-4, 8; Green Decl. ¶ 3; Harding Decl. ¶¶ 3, 5; Hightower Decl. ¶¶ 3-5, 9; Kyle Decl. ¶¶ 3, 5, 7, 14; LaFleur Decl. ¶¶ 4-5; Lawson Decl. ¶¶ 3, 5, 7; McThay Decl. ¶ 3; Rodriguez Decl. ¶¶ 4, 6, 12).  They also ensure that Crew Members are complying with the Restaurant's policies and procedures, identify and correct errors, and supervise quality control and customer service. (Armstrong Decl. ¶¶ 5-6; Borden Decl. ¶¶ 3, 6, 7; Burden Decl. ¶¶ 3, 5; Fike Decl. ¶¶ 7-8; Gooding Decl. ¶ 4; Harding Decl. ¶¶ 5, 8; Hightower Decl. ¶¶ 3-5; Kyle Decl. ¶¶ 3, 5, 7-8; LaFleur Decl. ¶¶ 4-5; Lawson Decl. ¶ 6; McThay Decl. ¶ 6; Rodriguez Decl. ¶ 4).

All Current Assistant Managers have the authority to issue disciplinary warnings and make termination recommendations.  (Armstrong Decl. ¶ 12; Borden Decl. ¶ 11; Burden Decl. ¶ 10; Fike Decl. ¶ 11; Gooding Decl. ¶ 12; Green ¶ 9; Harding Decl. ¶ 11; Hightower Decl. ¶ 7; Kyle Decl. ¶ 13; LaFleur Decl. ¶ 10; Lawson Decl. ¶ 9; McThay Decl. ¶ 8; Rodriquez Decl. ¶ 10).  They are also involved, to varying degrees, in interviewing applicants, hiring, or collaborating on

whether to hire new Crew Members and conducting current Crew Member performance evaluations.  (Armstrong Decl. ¶¶ 10-11; Burden Decl. ¶ 9; Borden Decl. ¶ 9; Fike Decl. ¶¶ 9-10; Gooding Decl. ¶¶ 9-11; Green ¶¶ 7-8; Harding Decl. ¶¶ 9-10; Hightower Decl. ¶¶ 5-6; Kyle Decl. ¶¶ 11-12; LaFleur Decl. ¶¶ 8-9; McThay Decl. ¶ 8; Rodriquez Decl. ¶¶ 8-9).

Most Current Assistant Managers set up positioning charts, assign Crew Members their duties, and determine at which station a Crew Member will work, depending on the Crew Member's individual skills and the current volume and needs of the Restaurant.  (Borden Decl. ¶ 3; Burden Decl. ¶ 6; Fike Decl. ¶ 7; Gooding Decl. ¶¶ 3-4; Harding Decl. ¶¶ 3, 4, 7; Hightower Decl. ¶¶ 3-4; Kyle Decl. ¶ 3; Lawson Decl. ¶¶ 3, 5, 7; McThay Decl. ¶ 5; Rodriquez Decl. ¶¶ 3, 5). Most of them also create and manage Crew Members' weekly work schedules and decide whether to send a Crew Member home early if the Restaurant is overstaffed.  (Id.; see also Green ¶ 4; LaFleur Decl. ¶ 5).

Some Current Assistant Managers are responsible for ensuring the equipment and grounds are properly maintained (Borden Decl. ¶ 3; Gooding Decl. ¶ 3; Hightower Decl. ¶ 3; Kyle Decl. ¶ 3), counting inventory (Borden Decl. ¶ 3; Fike Decl. ¶ 8; Hightower Decl. ¶ 3; Kyle Decl. ¶ 3; LaFleur Decl. ¶ 4), and counting the cash in the Restaurant's safe (Borden Decl. ¶ 4; Burden Decl. ¶ 3;

Hightower Decl. ¶ 3; Kyle Decl. ¶ 6).  Some Current Assistant Managers review their Restaurant's sales numbers against its labor and food costs (Borden Decl. ¶ 3; Green Decl. ¶¶ 3-4; Hightower Decl. ¶ 3; Kyle Decl. ¶ 6; LaFleur Decl. ¶¶ 4-5; McThay Decl. ¶ 3), handle customer complaints (Borden Decl. ¶ 5; Kyle Decl. ¶ 7), and manage the opening or closing of the Restaurant (Burden Decl. ¶ 3; LaFleur Decl. ¶ 6; Lawson Decl. ¶ 3).

Although all Current Assistant Managers spend some portion of their day performing Crew Member duties, such as cooking, cleaning, and serving customers, the amount of time spent, and reasons for doing so, vary.  For example, Aneshia Armstrong, who currently works at the Smyrna Restaurant and has worked at the College Park, Jonesboro, Riverdale and Ponce Restaurants, performs "Crew Member duties up to 30% of [her] time" because "[t]here are occasions when [the Restaurant] may become very busy and [she] must jump in and perform tasks typically performed by Crew Members" and, because of her training, she "can determine when [she] is needed to assist Crew Members in their duties." (Armstrong Decl. ¶¶ 3-4, 9).

Chelsea Kyle, who currently works at the Camp Fulton Restaurant and has worked at the Smyrna Restaurant, states that she spends 60% of her time performing management duties and that she performs Crew Member duties as

needed, to relieve a Crew Member for his break or during times of high volume. (Kyle Decl. ¶ 10).

Kimberly Lawson, who works at the College Park Restaurant, states that she is "the type of manager that likes to step-in and work beside [her] Crew members." (Lawson Decl. ¶ 8). She "often work[s] alongside them on various posts" and, although she "probably do[es] this more than 50% of the time [she] is working," she is "still managing and directing the Crew Members' work" and "still tell[s] them which tasks to perform and when to perform them." (Id.).

Michelle McThay, who works at the Jonesboro Restaurant, spends "about 20% her [her] time exclusively performing management duties," while "[t]he other 80% of [her] time, [she] multi-task[s] and help[s] Crew Members with their duties while simultaneously directing their work." (McThay Decl. ¶ 7).

Myia Borden, who works at the Riverdale Restaurant, spends "approximately 90% of [her] time performing management tasks," and "may spend around 10% of [her] time assisting Crew Members in their duties." (Borden Decl. ¶ 8). Borden "only perform[s] Crew Member duties to relieve a Crew Member . . . for his or her break," "make[s] the decision on [her] own to assist Crew Members with their duties," and "use[s] [her] own judgment and discretion on when extra assistance is needed." (Id.). Borden "assign[s] cleaning duties to the

16

Crew members and [she] very rarely assist[s] with such duties but [has] done so in the past to show the Crew Members that [she] is willing to do it." (Id.).

Defendants also submit declarations from Joseph Fike and Virdelia Harris, current employees who worked with Plaintiff at the Fairburn Restaurant. Fike, who is currently an Assistant Manager at the Smyrna Restaurant, states:

> I worked with Ayotunda Lovett for a short period of time at the [Fairburn] location. At that time, I served as the General Manager and Ms. Lovett served as my Assistant Manager. Ms. Lovett was responsible for scheduling the Crew Members and even did the mangers' schedule. I put the most emphasis on Ms. Lovett's scheduling duties and her duties with respect to training and developing the Crew Members.

(Fike Decl. ¶ 14). Harris, who is currently a Shift Supervisor at the Riverdale Restaurant, states:

> When I worked as a Crew Member at [the Fairburn Restaurant], Ayotunda Lovett was the Assistant Manager. Ms. Lovett trained me on how to prepare salads. She also made my work schedule and decided which hours I would work. Ms. Lovett directed Crew Members, including myself, in the performance of our duties. Ms. Lovett was definitely a manager; she did not operate as just another Crew Member. In fact, Ms. Lovett was responsible for closing the store more often that [sic] the General Manager was.

(Harris Decl. [20.2 at 6-9] ¶ 12).

B.    Procedural History

On April 3, 2014, Plaintiff filed her Complaint in this putative collective action. Plaintiff asserts that Defendants misclassified its Assistant Managers,

including Plaintiff, and Shift Supervisors as "exempt" employees, and, as a result, failed, in violation of the FLSA, to pay overtime compensation to Plaintiff for hours she worked in excess of forty (40) hours per week.

On May 13 and May 20, 2014, Greene and Norman, respectively, opted-in to this litigation [5, 6].

On September 11, 2014, Plaintiff filed her Motion for Conditional Class Certification [14]. Plaintiff seeks to represent a class of current and former Assistant Managers and Shift Supervisors "who were employed by Defendants over the last three years, worked over 40 hours during one or more workweeks, and were not paid time-and-a-half compensation for all hours worked over 40." (Pls' Mot. for Cond. Class Cert. at 1). In her Reply Brief, Plaintiff "refined [her] class definition" and seeks now to include Shift Supervisors only "to the extent that Defendants classified any of their shift supervisors as exempt . . . ." (Pl's Reply in Support of Mot. for Cond. Class Cert. [29] at n.2).[5] Plaintiff requests that the Court conditionally certify the class as "all current or former 'assistant managers' or former 'managers' (not 'General Manager') [sic] whom Defendants classified as exempt, over the past three years." (Id. at 11).

---

[5]     There is nothing in the record to show that Defendants here, now or in the past, classified Shift Supervisors as exempt.

On September 25, 2014, Defendants moved to dismiss Plaintiff's FLSA claim, arguing that the Court lacks subject matter jurisdiction because Defendants made an offer of judgment, pursuant to Rule 68 of the Federal Rules of Civil Procedure, which moots Plaintiff's claims.  (Defs' Mot. to Dismiss [15]).

Also on September 25, 2014, Defendants moved for partial summary judgment on Opt-in Plaintiff Greene's claim [16].  Defendants assert that, because Greene was paid on an hourly basis throughout her employment and was never classified as an exempt employee, Greene does not fall within the scope of the class of allegedly misclassified exempt employees Plaintiff seeks to represent.

On October 2, 2014, Greene withdrew her consent to opt-in to this litigation [18], and Plaintiff moved to voluntarily dismiss Greene from this action [19]. Plaintiff states that "[a]fter having received and reviewed Ms. Greene's Payroll Records, it has become clear that [Greene] is not similarly situated to Plaintiff Lovett or similarly situated to Opt-In Plaintiff Tishunda Norman . . . ."  (Pl's Mot. to Dismiss [19] at 2).  Defendants do not oppose dismissal, but the parties disagree whether Greene's claim should be dismissed with, or without, prejudice.

On March 23, 2015, Magistrate Judge Anand recommended that Defendants' Motion to Dismiss for Lack of Jurisdiction be denied, and that Plaintiff's Motion for Conditional Certification be granted in part and denied in

part.  The Magistrate Judge recommended that the Court conditionally certify a class of all Assistant Managers who work or worked for Defendants during the last three (3) years.  The Magistrate Judge recommended that Plaintiff's Motion for Conditional Certification be denied to the extent it seeks to include Shift Supervisors in the class conditionally certified.

On March 27, 2015, Defendants filed their "Motion for Reconsideration of Report and Recommendation on Motion for Conditional Class Certification or, in the Alternative, Motion to Decertify Class" [107].

On April 10, 2015, the Magistrate Judge recommended that Plaintiff's Motion for Voluntary Dismissal be granted, that Greene's claims be dismissed without prejudice, and that Defendants be awarded their reasonable costs incurred in defending against Greene's claims.  The Magistrate Judge also recommended that Defendants' Motion for Partial Summary Judgment on Greene's claims be denied as moot.  The parties did not object to the April 10th R&R.

On April 28, 2015, the Magistrate Judge, pursuant to 28 U.S.C. § 636, (i) denied Defendants' motion for reconsideration, and (ii) recommended that Defendants' motion for decertification be denied without prejudice.

On May 12, 2015, Defendants filed their Objections [128] to the March 23rd and April 28th R&Rs.  Defendants argue that the Magistrate Judge erred in

recommending that the Court conditionally certify a class of all Assistant

Managers who work or worked for Defendants during the last three (3) years.

Defendants argue further that, even if conditional certification was appropriate at

the time Plaintiff filed her motion, the Magistrate Judge nevertheless should have

granted Defendants' Motion to Decertify the class because discovery is now

complete and Plaintiff is not similarly situated to the putative class members.

## II.   DISCUSSION

### A.   Legal Standard on Review of an R&R

After conducting a careful and complete review of the findings and

recommendations, a district judge may accept, reject, or modify a magistrate

judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams

v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert denied, 459 U.S. 1112

(1983).  A district judge "shall make a *de novo* determination of those portions of

the report or specified proposed findings or recommendations to which objection is

made."  28 U.S.C. § 636(b)(1).  With respect to those findings and

recommendations to which a party has not asserted objections, the district judge

must conduct a plain error review of the record.  United States v. Slay, 714 F.2d

1093, 1095 (11th Cir. 1983).

The parties have not objected to the Magistrate Judge's recommendation that Defendant's Motion to Dismiss for Lack of Jurisdiction be denied, and that Plaintiff's Motion for Conditional Class Certification, to the extent it seeks to conditionally certify a class including Shift Supervisors, be denied.  The Court reviews those portions of the March 23rd R&R for plain error.

In their Objections, Defendants argue that the Magistrate Judge erred in recommending that the Court conditionally certify a class of all Assistant Managers who work or worked for Defendants during the last three (3) years.  The Court conducts a *de novo* review of whether Plaintiff is similarly situated to the class of current and former Assistant Managers whom she seeks to represent.[6]

B.    Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants argue that its August 8, 2014, offer of judgment, pursuant to Rule 68 of the Federal Rules of Civil Procedure, moots the controversy in Plaintiff's FLSA claim, and thus the Court lacks subject matter

---

[6]    Plaintiff fails to provide any authority to support that, because the Magistrate Judge had the authority to issue an order granting conditional certification, the Court is limited to conducting a plain error review of the record.  Even if the Magistrate Judge was authorized to decide Plaintiff's Motion for Conditional Class Certification, in view of the parties' extensive briefing, and Defendants' argument that the Magistrate Judge improperly applied the more lenient "notice stage" standard and failed to consider the declarations submitted by Defendants, the Court exercises its discretion to conduct a *de novo* review of the record regarding conditional certification of the proposed class of Assistant Managers.

jurisdiction over that claim.  Defendants assert that they served Lovett and Opt-in

Plaintiff Norman with offers of judgment, each "for an amount in excess of the

maximum potential overtime liability to which the recipient would have been or

could be awarded under the FLSA, inclusive of all damages, liquidated damages,

and interest."  (Defs' Br. in Supp. of Mot. to Dismiss [15.1] at 2-3).

The Magistrate Judge found that the Eleventh Circuit's opinion in

Stein v. Buccaneers Ltd. P'ship, which was issued while Defendants' Motion to

Dismiss was pending, makes it clear that "a plaintiff's individual claim is not

mooted by an unaccepted Rule 68 offer of judgment."  772 F.3d 698, 709

(11th Cir. 2014).  The Magistrate Judge recommended that Defendants' Motion to

Dismiss for Lack of Jurisdiction be denied, and the Court finds no plain error in the

Magistrate Judge's findings or recommendation.  See Stein, 772 F.3d at 709;

see also Walker v. Fin. Recovery Servs., Inc., 559 F. App'x 359 (11th Cir. 2015)

(per curium) (applying Stein).  Defendants' Motion to Dismiss for Lack of

Jurisdiction is denied.

      C.    Plaintiff's Motion for Conditional Class Certification

          1.    Legal Standard

The FLSA requires covered employers to pay non-exempt employees who

work more than forty hours in a week an overtime rate of one and one-half times

the employee's regular pay rate for all hours worked that exceed forty.  28 U.S.C.

§ 207(a).  Section 216(b) imposes liability on employers for violations of Section

207 and authorizes employees to bring an action for an employer's failure to pay

overtime.  Employees may bring an FLSA overtime action individually or as a

collective action on behalf of themselves and other "similarly situated" employees:

> An action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Id. § 216(b).  In contrast to a class action under Federal Rule of Civil Procedure 23,

which generally requires potential plaintiffs to opt-out if they do not wish to be

represented in the lawsuit, a collective action under Section 216(b) requires

potential plaintiffs to affirmatively opt into the lawsuit.  Hipp v. Liberty Nat'l Life

Ins. Co., 252 F.3d 1208, 1216 (11th Cir. 2001).  "The decision to create an opt-in

class under § 216(b) . . . remains soundly within the discretion of the district

court."  Id. at 1219.[7]

---

[7]   Hipp involved a collective action under the Age Discrimination and Employment Act of 1967.  That statute incorporates the FLSA's collective action provision, and Hipp therefore applies in both contexts.  Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 n.37 (11th Cir. 2008).

The Eleventh Circuit encourages district courts to perform a two-step process to certify a collective action under Section 216(b).  Id.  In the initial, so-called "notice stage," the question is whether notice of the action should be given to potential class members.  Id. at 1218 (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213 (5th Cir. 1995)).  Relying on the pleadings and affidavits submitted by the parties, the court applies a "fairly lenient standard" that "typically results in 'conditional certification' of a representative class."  Id. (quoting Mooney, 54 F.3d at 1213-14).  Plaintiffs bear the burden of establishing that they are "similarly situated" to the employees they seek to represent.  Beecher v. Steak N Shake Operations, Inc., 904 F. Supp. 2d 1289, 1297 (N.D. Ga. 2012). Unsupported, generalized allegations of similarly are not sufficient.  Id. at 1297-98. The plaintiffs may meet this burden, which is not heavy, "by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary."  Id. (quoting Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996)). Plaintiffs are required only to show that they and the potential class-members are similarly, not identically, situated.  Grayson, 79 F.3d at 1096.  They are not required to show they were subjected to a common or unified policy, plan, or scheme, see id. at 1095, although this is a common and effective way to satisfy the

"similarly situated" requirement.  Plaintiffs "must [at least] make some

rudimentary showing of commonality between the basis for [their] claims and that

of the potential claims of the proposed class, beyond the mere facts of job duties

and pay provisions."  Beecher, 904 F. Supp. 2d at 1298 (quoting

Williams v. Accredited Home Lenders, Inc., No. 1:05-cv-1681-TWT,

2006 WL 2085312, at *3 (N.D. Ga. July 25, 2006)); see also Barron v. Henry

Cnty. Sch. Sys., 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) ("[W]hile a unified

policy, plan, or scheme of discrimination may not be required to satisfy the more

liberal similarly situated requirement, some identifiable facts or legal nexus must

bind the claims so that hearing the cases together promotes judicial efficiency.").

    If the Court conditionally certifies a class, potential class members receive

notice and an opportunity to opt into the class and the parties complete discovery.

Hipp, 252 F.3d at 1218 (quoting Mooney, 54 F.3d at 1213-14).  Whether notice

shall be given also focuses on whether there are other employees who would desire

to opt-in, and who are "similarly situated" to plaintiffs.  See Dyback v. State of Fla.

Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991).  Plaintiffs must show

there are other employees who wish to opt in and that these other employees are

similarly situated.  See Delano v. MasTec, Inc., No. 8:10-cv-320-T-27MAP,

2011 WL 2173864, at *4 (M.D. Fla. June 2, 2011).  "A plaintiff's or counsel's

belief in the existence of other employees who desire to opt in and 'unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify' certification of a collective action and notice to a potential class." Id. (quoting Mackenzie v. Kindred Hosps. East, L.L.C., 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003)) (citing Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983)).

The second stage is optional and usually occurs if the defendant moves for "decertification" after the completion of all or most discovery in the case. Hipp, 252 F.3d at 1218 (quoting Mooney, 54 F.3d at 1213-14). Based on the more extensive factual record, the court makes a factual determination whether claimants are similarly situated. Id. (quoting Mooney, 54 F.3d at 1213-14). If they are, the collective action proceeds on the merits. If not, the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice, and the original plaintiffs proceed on their individual claims. Id. (quoting Mooney, 54 F.3d at 1213-14).

In cases where there is factual information available to evaluate the similarity of potential class member claims, courts will combine the first and second stages and apply the more stringent second stage standard. See, e.g., Williams, 2006 WL 2085312 at *4 (combining first and second stage where plaintiffs disseminated informal notice to potential opt-in plaintiffs and substantial

discovery had been completed).  The facts are not yet sufficiently developed in this matter to justify this higher standard.[8]

This does not mean, however, that the Court limits its analysis to the evidence presented by Plaintiff.  Although Plaintiff asserts that the policies and procedures in Defendants' various manuals strictly governed how to cook, clean and serve customers, Plaintiff does not argue that Defendants had a policy stating that these were Assistant Managers' primary duties.  A close reading of Plaintiff's declaration shows that her claim is based on her anecdotal evidence that the duties she actually performed, and observed other Assistant Managers performing, were non-managerial.[9]  Defendants submit evidence describing the job description and

---

[8]    That *some* discovery has been conducted does not, as Defendants appear to argue, require the Court to apply the more stringent second stage standard.  See Robinson v. Ryla Teleservs., Inc., No. CA 11-131-KD-C, 2011 WL 6667338, at *2 (S.D. Ala. Dec. 21, 2011) ("Simply put, the Court's decision to grant the Defendant's request to conduct limited discovery to allow it to prepare an opposition did not bump this proceeding from the first to the second stage.").

[9]    For example, Plaintiff states that she "observed that *all the primary duties* of all Assistant Managers . . . *required them to*: (a) to [sic] prepare and cook the food, (b) to serve the customers, and (c) to keep the restaurant clean."  (First Lovett Decl. ¶ 17) (emphasis added).  A close reading of Plaintiff's declaration shows that Plaintiff does not claim that these *were* their primary duties, but rather that their primary duties, whatever they were, *required* them to perform these tasks.  It is well-settled that "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements [of the exemption] . . . are otherwise met."  29 C.F.R. § 106(a).  Put another way, "an employee's performance of nonexempt work does not preclude the exemption if

duties for the Assistant Manager position generally, and the declarations of thirteen (13) Current Assistant Managers who describe, in detail, the day-to-day duties they actually perform as Assistant Managers.  The Court finds that consideration of this evidence is appropriate at this stage in the litigation because the issues in this case—whether the duties Assistant Managers perform are consistent with their categorical designation as exempt employees—requires the Court to evaluate the day-to-day job duties the Assistant Managers actually performed.  Put another way, because Plaintiff asserts that she, and all other Assistant Managers, were misclassified as exempt because the "primary duties" they actually performed were non-managerial, the Current Assistant Managers' descriptions of their day-to-day duties therefore is relevant to whether Plaintiff is similarly situated to the class she seeks to represent.  The Court notes that, "if [it] were to allow the case to proceed past stage one of the collective action certification process, the Court would have to consider this evidence in revisiting the similarly-situated inquiry on the

---

the employee's primary duty remains management."  <u>Morgan</u>, 551 F.3d at 1268. 29 C.F.R. § 541.106(b) further provides:

> For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food . . . and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management.  An assistant manager can supervise employees and serve customers at the same time without losing the exemption.

29 C.F.R. § 541.106(b).

Defendant[s'] motion to decertify at stage two.  Because the Court has the evidence before it at stage one, the Court will consider it."  See Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1272 n.4 (M.D. Ala. 2004).  The Court also may consider a defendant's "affidavits to the contrary" in determining if a plaintiff has met her burden to show she is similarly situated to proposed class members.  See Grayson, 79 F.3d at 1097 (at first stage, plaintiffs can show they are similarly situated to proposed class "by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by *affidavits which successfully engage defendants' affidavits to the contrary*") (emphasis added).[10]

  2. <u>Analysis</u>

    a. <u>Shift Supervisors</u>

In her Motion for Conditional Class Certification, Plaintiff sought to include Shift Supervisors in this collective action, arguing that they perform the same duties as Assistant Managers and are not paid overtime compensation.  Defendants present evidence to show that, unlike Assistant Managers, Shift Supervisors are classified as non-exempt, are required to record their hours, and are eligible to

---

[10] To the extent Plaintiffs argue that the Court should not consider the Current Assistant Managers' declarations because the declarants do not state whether they received "a full disclosure about this case and that the information provided was provided voluntarily and not under duress," the Court considers only the declarants' statements regarding their job duties, to evaluate whether they and Plaintiff are similarly situated.

receive overtime pay for hours worked in excess of forty hours per week.  In response to this evidence, Plaintiff "refine[d] [her] class definition" and now seeks to include Shift Supervisors "to the extent that Defendants classified any of their Shift Supervisors as exempt . . . ."  (Pl's Reply at n.2).

The Magistrate Judge found that Plaintiff's claim is based on a misclassification theory—that she was not paid overtime compensation because she and all other Assistant Managers are categorically misclassified as exempt—and Plaintiff is not similarly situated to Shift Supervisors who were paid hourly, classified as non-exempt, and eligible for overtime compensation.  The Magistrate Judge also found that Plaintiff fails to present any evidence to support her conclusory assertion that some Shift Supervisors may have been classified as exempt, including because Greene does not allege, and the evidence does not support, that Defendants ever classified Greene—or any other Shift Supervisor—as exempt .  The Magistrate Judge recommended that Shift Supervisors be excluded from any class conditionally certified, and the Court finds no plain error in the Magistrate Judge's findings or recommendation.  See Grayson, 79 F.3d at 1096 (plaintiffs must show they and potential class members are similarly situated); Beecher, 904 F. Supp. 2d at 1297-98 (unsupported generalized allegations of similarly are not sufficient; plaintiff must make some showing of commonality

between basis for their claims and potential claims of proposed class, beyond mere facts of job duties and pay provisions).  Plaintiff's Motion for Conditional Class Certification, to the extent it seeks to include Shift Supervisors in the class definition, is denied.

                    b.    Current and Former Assistant Managers

       Plaintiff, relying on her declaration, and the declaration of Opt-in Plaintiff Norman, claims that she is similarly situated to the class of current or former Assistant Managers who Plaintiff claims are categorically misclassified as "exempt."

       Plaintiff and Norman assert that, although they were employed as "Assistant Managers" and classified as exempt, their "primary duties" were, and the majority of their time was spent performing, non-managerial duties.  In their declarations, which are largely identical, Plaintiff and Norman state that, as an Assistant Manager, their "primary job duties were: (a) to prepare and cook the food, (b) to serve customers, and (c) to keep the restaurant clean," and they "observed that all the primary duties of all assistant managers and shift supervisors required them to [perform these same duties]."  (First Lovett Decl. ¶¶ 16-17; Norman Decl. ¶¶ 19-20).  Plaintiff and Norman assert that they "spent the majority of [their] time performing these primary duties," that they "did not manage any of the restaurants

                                         32

in Defendants' restaurant group," and that they were "not authorized to . . . hire or fire employees for Defendants."  (First Lovett Decl. ¶¶ 22, 26-27; Norman Decl. ¶¶ 10-11, 28).  They further state that "[v]irtually all of the duties [they] performed were strictly governed by the policies and procedures contained in Defendants' various manuals, and [they] lacked the discretion to vary from these procedures and policies in performing [their] duties."  (First Lovett Decl. ¶ 29; Norman Decl. ¶ 13).  Plaintiff and Norman assert that they "personally observed that there were numerous similarly situated assistant managers . . . who: (a) performed the same or similar job duties that [they] performed; (b) were paid a salary; (c) worked over 40 hours in many workweeks; and (d) were not paid an overtime premium due to Defendants' uniform misclassification."  (First Lovett Decl. ¶ 33).[11]

Defendants submit declarations from thirteen (13) Current Assistant Managers, at least some of whom worked as Assistant Managers at the same time as Plaintiff and Norman.  These declarations support that, while Assistant Managers perform Crew Member tasks such as cooking, serving customers and cleaning the restaurant, these are not their "primary duties," and they engage in

---

[11]    Interestingly, Plaintiff does not assert that these individuals would be interested in joining this collective action if a class is conditionally certified. Indeed, the Current Assistant Managers affirmatively state they do not want to opt-in, and in the fourteen (14) months this action has been pending, only one Assistant Manager has opted-in to this action.

cooking, serving and cleaning duties in their own discretion, for varying lengths of time, as means of managing, training and directing Crew Members, or when the restaurant is experiencing high volume, it is necessary to allow Crew members to take breaks, or to ensure Crew Members are performing their duties in accordance with the Restaurant's policies and procedures.  (See, e.g., Armstrong Decl. ¶¶ 3-4, 9; Kyle Decl. ¶ 10; Lawson Decl. ¶ 8; McThay Decl. ¶ 7; Borden Decl. ¶ 8).  The Current Assistant Managers who most often perform Crew Member Duties state that they do so because it is their management style, and even while working alongside Crew Members at their posts, they are "still managing and directing the Crew Members' work" and "still telling them which tasks to perform and when to perform them."  (See Lawson Decl. ¶ 8; see also McThay Decl. ¶ 7 (spends 80% of her time "multi-tasking and helping Crew Members with their duties while simultaneously directing their work"); Gooding Decl. ¶ 8 (performs Crew Member duties 45% of her time "to train Crew Members in their efficiency and knowledge of proper procedure"); Hightower Decl. ¶ 5 ("[E]ven when I need to jump in and take on some of these duties, I am monitoring the Crew Members and training them to ensure they are following proper procedures and policies."); LaFleur Decl. ¶ 7 (same)).

The Current Assistant Managers also issue disciplinary warnings, make hiring and firing recommendations, and use their experience, judgment and discretion to create and manage Crew Members' schedules, and assign and direct Crew Members in performance of their duties.  (See, e.g., Armstrong Decl. ¶ 12; Borden Decl. ¶¶ 3, 11; Burden Decl. ¶¶ 6, 10; Fike Decl. ¶¶ 7, 11; Gooding Decl. ¶¶ 3-4, 12; Green ¶¶ 4, 9; Harding Decl. ¶¶ 3-4, 11; Hightower Decl. ¶¶ 3-4, 7; Kyle Decl. ¶¶ 3, 13; LaFleur Decl. ¶¶ 5, 10; Lawson Decl. ¶¶ 3, 5, 7, 9; McThay Decl. ¶¶ 5, 8; Rodriquez Decl. ¶¶ 3, 5, 10).  Some Current Assistant Managers perform additional other managerial duties, such as opening or closing the Restaurant, counting inventory, or reviewing their Restaurant's sales numbers against its labor and food costs.  (See Borden Decl. ¶ 3; Burden Decl. ¶ 3; Fike Decl. ¶ 8; Green Decl. ¶¶ 3-4; Hightower Decl. ¶ 3; Kyle Decl. ¶¶ 3, 6; LaFleur Decl. ¶¶ 4-6; Lawson Decl. ¶ 3; McThay Decl. ¶ 3).

The evidence before the Court does not support that Plaintiff is similarly situated to the class of current and former Assistant Managers she seeks to represent.  Plaintiff, Norman, and the Current Assistant Managers share the same job title, are paid a salary, and, for at least some portion of their workday, perform non-managerial duties such as cooking, cleaning and serving customers.  These general statements, without more, are insufficient to support Plaintiff's assertion

that she and the proposed class members are similarly situated because all

Assistant Managers perform non-managerial duties are therefore categorically

misclassified as exempt from the FLSA's overtime pay requirements.  See, e.g.,

Morgan, 551 F.3d at 1268-69 ("[A]n employee's performance of nonexempt work

does not preclude the exemption if the employee's primary duty remains

management. . . . Whether an employee meets the requirements of [the exemption]

when the employee performs concurrent duties is determined on a case-by-case

basis . . . .").[12]  The evidence submitted by Defendants to the contrary significantly

discredits Plaintiff's claim that she is similarly situated to other Assistant

Managers.

   The evidence rather is that the job duties Assistant Managers actually

perform, and the time spent performing managerial versus non-managerial duties,

at least vary throughout the proposed class and more persuasively are different

---

[12]    Plaintiff asserts that the Defendants told her they "would pay [her] an annual
base salary of approximately $28,500, plus overtime" and "explained that the base
salary covered the first 45 hours that [she] worked each week and that [she] would
receive overtime pay, for all hours worked over 45, at a rate of time-and-one-half
[her] regular rate of pay, for all hours thereafter."  (Second Lovett Decl. [21.1]
¶¶ 6-7).  The Court agrees with the Magistrate Judge's finding that this alleged
individual agreement does not affect Plaintiff's misclassification theory—the basis
for her collective action allegations—because the FLSA does not prohibit an
employer from paying its exempt employees additional compensation.  The alleged
agreement could support an alternative basis, in contract or promissory estoppel,
for recovery of alleged unpaid wages.

than the duties Plaintiff and Norman claim they performed.  While Plaintiff and

Norman assert that their "duties did not include the exercise of discretion and

independent judgment," the Current Assistant Managers' declarations show that

they exercise significant discretion in determining Crew Members' work

schedules, assigning them to specific workstations, and deciding when they

themselves need to perform Crew Member duties as part of their broader

managerial responsibilities.  Without deciding whether they were misclassified, the

Current Assistant Managers' Declarations—which are not inconsistent with

Plaintiff's and Norman's declarations[13]—support that Plaintiff and Norman

performed different day-to-day duties than the class of Assistant Managers

Plaintiff seeks to represent.  Simply put, although Plaintiff and Norman may be

similarly situated to each other, there is no evidence to support that they are

similarly situated to the Current Assistant Managers.[14]  Plaintiff fails to show that

---

[13]     That the Current Assistant Managers issue disciplinary warnings, make
hiring and firing *recommendations*, schedule, and direct Crew Members in
performance of their duties, is not inconsistent with Plaintiff's description of her
job duties.  Plaintiff merely states that she did not have authority to hire or fire
other employees, and she conclusorily asserts that she did not "manage" any of the
Restaurants.  The Court also notes that Fike and Harris testified, and Lovett does
not dispute, that as an Assistant Manager during the time they worked with Lovett,
Lovett was responsible for scheduling and training Crew Members.  (See Fike
Decl. ¶ 14; Harris Decl. ¶ 12).

[14]     The Court notes that, during the period for which she can recover for alleged
FLSA violations, Plaintiff was employed as an Assistant Manager at only the

she is similarly situated to the class she seeks to represent, and her Motion for Conditional Class Certification is denied.

Defendants' objections to the Magistrate Judge's findings in his March 23rd R&R regarding conditional certification, are sustained.  Having found that Plaintiff cannot maintain this as a collective action, Defendants' motion to decertify class, and the corresponding portion of the April 28th R&R, are deemed moot.

D.    Opt-in Plaintiff Greene

Having found that Plaintiff is not similarly situated to Shift Supervisors and cannot bring this collective action on their behalf, Greene cannot be a potential class member and the Court must dismiss her from this action without prejudice. Cf. Hipp, 252 F.3d at 1218 (if the court finds claimants are not similarly situated and decertifies class, opt-in plaintiffs are dismissed without prejudice and original plaintiffs proceed on their individual claims).  Plaintiff's Motion to Voluntarily

---

Fairburn Restaurant, which is owned and operated by "SJAC South Fulton I, LLC."  SJAC South Fulton I, LLC is not named as a defendant in this action, even though Plaintiff, in her Motion for Conditional Class Certification, acknowledges that Defendants identified it as one of the "Doe" Defendants in their Answer and as the entity that responded as Plaintiff's employer to the Equal Employment Opportunity Commission charge Plaintiff filed based on alleged discrimination and retaliation she suffered at the Fairburn Restaurant.  It is difficult to conclude that Plaintiff should be permitted to bring a collective action on behalf of others against their employers when, as it currently stands, Plaintiff has failed to identify her employer as a defendant in this action.

Dismiss, Defendant's Motion for Partial Summary Judgment, and the Magistrate Judge's April 10th R&R addressing these motions, are therefore moot.

Although the Court dismisses Greene from this action on grounds other than those asserted by the parties, the parties do not object to the Magistrate Judge's recommendation that Defendants be awarded the costs they incurred, through October 2, 2014, in defense of Greene's claim.[15]  The parties dispute, however, whether the costs claimed by Defendants are allowable.

The costs permitted to be taxed against an opposing party are listed in 28 U.S.C. § 1920 and include "[f]ees for printed or electronically recorded transcripts *necessarily obtained* for use in the case."  28 U.S.C. § 1920(2) (emphasis added). The Eleventh Circuit has consistently held that "[w]here the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable."  EEOC v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000).  Here, Defendants claim costs, in the amount of $937.00, for the transcripts of witness *interviews*—not depositions—of four (4) Shift Supervisors currently employed by Defendants.  These transcripts are not admissible and that Defendants chose to have transcribed these witnesses'

---

[15]     Had it not been deemed moot, the Court notes that it would have granted Plaintiff's Motion for Voluntary Dismissal and permitted Defendants to recover their reasonable costs incurred in defending against Greene's claim.

interviews does not support that the cost should be allowed.  Defendants fail to

show that the transcripts of these interviews were *necessarily* obtained for use in

this case, rather than simply for Defendants' convenience.  See id.; see also

Massey, Inc. v. Moe's Southwest Grill, LLC, No. 1:07-cv-741-RSW,

2013 WL 6190482, at * 5 (N.D. Ga. Nov. 26, 2013) ("[T]he Federal Rules do not

provide reimbursement for fees associated with fact finding or incurred for the

attorneys' convenience.").[16]  Having reviewed the Bill of Costs submitted by

Defendants, the Court finds that these are not allowable costs.  Plaintiff's Motion

to Strike Defendants' Bill of Costs is granted.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Justin S. Anand's

March 23, 2015, Non-Final Report and Recommendation [103] is **ADOPTED IN**

**PART.**  The portions of the R&R regarding the Court's jurisdiction and denying

conditional certification of a class including Shift Supervisors, are **ADOPTED.**

---

[16]     The interviews were conducted on July 2, 2014, and the July 23, 2014, invoice for the transcript includes a shipping and handling charge for the certified transcripts and CD recordings of the interviews.  The Court notes that the Shift Supervisors' declarations, which Defendants submitted in support of their opposition to conditional certification, were also executed on July 2, 2014.  It thus appears that Defendants already had the signed declarations they argue were necessary to their defense of Greene's claim before they ordered, or at least received, the certified transcripts and CD recordings.

To the extent the Magistrate Judge recommends that Plaintiff's Motion for Conditional Class Certification be granted in part, the Court **SUSTAINS** Defendants' Objections [128] and the Magistrate Judge's recommendation that Plaintiff be found similarly situated to other Assistant Managers and that a class of Assistant Managers be conditionally certified, is **NOT ADOPTED.**  The Court, on *de novo* review, finds that Plaintiff is not similarly situated to other Assistant Managers and determines, in its discretion, to deny conditional certification.

   **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction [15] is **DENIED**.

   **IT IS FURTHER ORDERED** that Plaintiff's Motion for Conditional Class Certification [14] is **DENIED.**

   **IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment [16], Plaintiff's Motion for Voluntary Dismissal [19], and Defendants' Motion to Decertify Class [107], are **DENIED AS MOOT.**

   **IT IS FURTHER ORDERED** that Magistrate Judge Anand's April 10 and April 28, 2015, Non-Final Reports and Recommendations [113, 118], because they are moot, are **NOT ADOPTED.**

   **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike [123] Defendants' Bill of Costs [121] is **GRANTED.**

**SO ORDERED** this 23rd day of June, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE