IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AYOTUNDA LOVETT, individually
and on behalf of all similarly situated
persons,

**Plaintiff,**

v.                                                         1:14-cv-983-WSD

SJAC FULTON IND I, LLC d/b/a
Zaxby's, et al.,

**Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Ayotunda Lovett's ("Plaintiff" or

"Lovett") Motion for Reconsideration [143] of the Court's June 23, 2015, Order

[142]. Also before the Court is Plaintiff's Motion to Supplement the Record on

Conditional Certification [145] ("Motion to Supplement"), and Defendants'

"Motion to Exclude or in the Alternative Motion to Strike the July 17, 2015,

Declaration of Jonathan Rodriguez" [148] ("Motion to Exclude").

## I.   BACKGROUND[1]

This was a putative collective action brought by Plaintiff against Defendants,

who own and operate various Zaxby's fast-food restaurants in the Atlanta, Georgia,

---

[1]     The facts and procedural history of this case are more thoroughly set out in
the Court's June 23rd Order. The Court briefly summarizes the relevant
background in this Order.

area.  Plaintiff claims that Defendants misclassified its Assistant Managers, including Plaintiff, as "exempt" employees, and, as a result, failed to pay overtime compensation to Plaintiff for hours worked in excess of forty (40) hours per week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.[2]

On April 3, 2014, Plaintiff filed her Complaint [1].  On September 11, 2014, Plaintiff filed her Motion for Conditional Class Certification [14].  Plaintiff requested that the Court conditionally certify the class as "all current or former 'assistant managers' or former 'managers' (not 'General Manager') [sic] whom Defendants classified as exempt, over the past three years."  (Pl's Reply [29] at 11).[3]  Defendants opposed conditional certification and relied on declarations from thirteen (13) Assistant Managers currently employed by Defendants ("Current Assistant Managers"), to support their argument that Plaintiff is not similarly situated to the proposed class.  (Defs' Resp. [20] & Exs. A1-A13 [20.1]).

On March 23, 2015, Magistrate Judge Anand issued his Report and Recommendation ("R&R"), recommending that the Court conditionally certify a

---

[2]      Plaintiff also asserts claims, in her individual capacity, for retaliation and sex discrimination, under Title VII of the Civil Rights Act of 1964.

[3]      Plaintiff originally sought to represent a class of current and former Assistant Managers and Shift Supervisors "who were employed by Defendants over the last three years, worked over 40 hours during one or more workweeks, and were not paid time-and-a-half compensation for all hours worked over 40." (Mot. for Cond. Class Cert. at 1).  In her Reply Brief, Plaintiff "refined [her] class definition" to include Shift Supervisors only "to the extent that Defendants classified any of their shift supervisors as exempt . . . ."  (Pl's Reply at n.2).

class of all Assistant Managers who work or worked for Defendants during the last three (3) years.  (March 23rd R&R [103]).[4]

On March 27, 2015, Defendants filed their "Motion for Reconsideration of the Report and Recommendation on Motion for Conditional Class Certification, or, in the Alternative, Motion to Decertify Class" [107].

On April 28, 2015, the Magistrate Judge (i) denied Defendants' Motion for Reconsideration, and (ii) recommended that Defendants' Motion to Decertify be denied without prejudice.  (April 28th R&R [118]).

On May 12, 2015, Defendants filed their Objections [128] to the March 23rd and April 28th R&Rs.  Defendants argued that the Magistrate Judge erred in recommending that the Court conditionally certify a class of all Assistant Managers who work or worked for Defendants during the last three (3) years. Defendants argued further that, even if conditional certification was appropriate at the time Plaintiff filed her motion, the Magistrate Judge nevertheless should have granted Defendants' Motion to Decertify because discovery is now complete and Plaintiff is not similarly situated to the putative class members.

---

[4]      The Magistrate Judge also recommended that Plaintiff's Motion for Conditional Certification be denied to the extent it sought to include Shift Supervisors in the class, and that Defendants' Motion to Dismiss for Lack of Jurisdiction be denied.  The parties did not object to these recommendations, and, finding no plain error, the Court adopted them.  (See June 23rd Order at 22-23). Plaintiff's Motion for Reconsideration does not involve these issues.

On June 23, 2015, the Court sustained Defendants' Objections to the Magistrate Judge's recommendation that Plaintiff be found similarly situated to other Assistant Managers and that a class of Assistant Managers be conditionally certified.  The Court, having conducted a *de novo* review of the record, concluded that Plaintiff is not similarly situated to the class of current and former Assistant Managers whom she sought to represent.  The Court found that, although Plaintiff, opt-in plaintiff Tishunda Norman ("Norman"), and the Current Assistant Managers share the same job title, are paid a salary, and, for at least some portion of their workday, perform non-managerial duties, these general statements, without more, are insufficient to support Plaintiff's assertion that she and the proposed class members are similarly situated.  The evidence, rather, was that the job duties Assistant Managers actually perform, and the time spent performing managerial versus non-managerial duties, varied throughout the proposed class and, more persuasively, was different than the duties Plaintiff and Norman claim they performed.  The Court found that, although Plaintiff and Norman may be similarly situated to each other, there is no evidence to support that they are similarly situated to the Current Assistant Managers.  The Court denied Plaintiff's Motion for Conditional Certification, and denied as moot Defendants' Motion to Decertify.

On July 3, 2015, Plaintiff moved for reconsideration of the Court's June 23rd Order.  Plaintiff argues that the Court erred in conducting a *de novo* review of whether Plaintiff is similarly situated to the class of current and former Assistant Managers she seeks to represent.  Plaintiff argues further that, "[s]ince the Court's review should have been limited to assessing whether the Magistrate committed clear legal error when he concluded that Defendants' declarations had a low probative value, the Court's holding in this regard was in error and warrants reconsideration as well."  ([143.1] at 3-4).

On July 28, 2015, Plaintiff filed her Motion to Supplement.  Plaintiff requests that the Court, in deciding her Motion for Reconsideration, consider the July 16, 2015, Declaration of Jonathan Rodriguez ("Second Rodriguez Declaration") [145.1].  Rodriguez is one of the Current Assistant Managers whose July 1, 2014, declaration ("First Rodriguez Declaration") [20.1 at 64-67] was submitted by Defendants in opposition to conditional certification.  Rodriguez now claims that "[t]here are a number of inaccurate statements included in [his First D]eclaration," that when he signed it, he "did not understand everything that was going on," and that he had "the firm impression that [he] had no choice but to sign the [First D]eclaration . . . whether [he] agreed with its contents or not."  (Second Decl. ¶¶ 16-18).  Plaintiff argues that, based on the Second Rodriquez Declaration,

"the rest of Defendants' declarations are so inherently unreliable that they do not warrant the Court's consideration."  (Mot. to Suppl. at 6).

On August 3, 2015, Defendants filed their Motion to Exclude the Second Rodriguez Declaration.  Defendants also seek to recover their attorneys' fees and costs, under 28 U.S.C. § 1927, based on Plaintiff's counsel's conduct in obtaining the Second Rodriguez Declaration and filing the Motion to Supplement.

## II.    DISCUSSION

### A.    Legal Standard

A district court has discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered.  See Fed. R. Civ. P. 54(b); see also Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1315 (11th Cir. 2000).  The Court does not reconsider its orders as a matter of routine practice, and motions for reconsideration must be filed "within twenty-eight (28) days after the entry of the order or judgment."  See LR 7.2 E, NDGa.  A motion for reconsideration is appropriate only where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.  See Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999); Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).  A motion for reconsideration should not be used to present the Court with

arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously-filed motion.  See Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007); Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); Pres. Endangered Areas, 916 F. Supp. at 1560 ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time.").

B.   Analysis

1.   Review of an R&R on a Motion for Conditional Certification

Plaintiff argues that reconsideration is necessary because the Court erred in conducting a *de novo* review of whether Plaintiff is similarly situated to the class of current and former Assistant Managers whom she sought to represent.  In her Response to Defendants' Objections to the R&Rs, Plaintiff argued that, because the R&Rs consider non-dispositive motions, the Court "may only modify the holdings of the Magistrate Judge, to the extent that Defendants can demonstrate that the Magistrate's conclusions were 'clearly erroneous' or 'contrary to law.'" (Pl's Resp. [133] at 1-2, 5-7).  In its June 23rd Order, the Court stated:

> Plaintiff fails to provide any authority to support that, because the
> Magistrate Judge had the authority to issue an order granting
> conditional certification, the Court is limited to conducting a plain
> error review of the record.  Even if the Magistrate Judge was
> authorized to decide Plaintiff's Motion for Conditional Class
> Certification, in view of the parties' extensive briefing, and
> Defendants' argument that the Magistrate Judge improperly applied

the more lenient 'notice state' standard and failed to consider the declarations submitted by Defendants, the Court exercises its discretion to conduct a *de novo* review of the record regarding conditional certification of the proposed class of Assistant Managers.

(June 23rd Order at 22 n.6).

In her Motion for Reconsideration, Plaintiff again argues that, because her Motion for Conditional Certification was a non-dispositive, pre-trial issue, the Court was required to review Magistrate Judge Anand's R&Rs under the "clearly erroneous or contrary to law" standard. This argument was considered, and rejected, in the Court's June 23rd Order, and it is not a proper basis for reconsideration. See Arthur, 500 F.3d at 1343. Denial of Plaintiff's Motion for Reconsideration is warranted on this basis alone.

Even if it was a proper basis for reconsideration, Plaintiff, for the second time, fails to provide any authority to support that the Court was *required* to conduct only a plain error review. That it may have been within his authority to decide Plaintiff's Motion for Conditional Certification does not change that, in this case, Magistrate Judge Anand chose to issue an R&R rather than an order, and thus the Court was required to conduct a *de novo* review of Defendants' objections to the R&R. See, e.g., Baker v. Peterson, 67 F. App'x 308, 310-311 (6th Cir. 2003) ("Here, the questions referred to the magistrate judge are nondispositive pretrial issues. Nonetheless, in some circumstances it is within the district court's

discretion to conduct a higher level of review of a magistrate judge's analysis of a nondispositive issue. . . .  Though the issues referred were nondispositive, the court evidenced a clear intent that it wished to maintain decision-making authority (not mere review for clear error).").[5]

Plaintiff's argument that the Court is precluded from exercising its discretion to conduct a *de novo* review of a matter referred to a magistrate judge is simply illogical.  In Thomas v. Arn, 474 U.S. 140 (1985), the Supreme Court observed:

> The district judge has jurisdiction over the case at all times.  He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

Thomas v. Arn, 474 U.S. 140, 154 (1985); see also United States v. Frans,

---

[5]    Plaintiff argues that the Court "implicitly acknowledged" the Magistrate Judge's authority to decide Plaintiff's Motion for Conditional Certification, based on Standing Order No. 14-01, which provides that magistrate judges may hear and determine pretrial matters "to the full extent allowed by 28 U.S.C. § 636(b)(1)(A) and (B)."  Standing Order No. 14-01 provides further that "[t]he District Judge may, at any time, withdraw the reference to the Magistrate Judge."  This supports that the district judge, at all times, retains ultimate control over the processing of the case and thus is not precluded from exercising its discretion to conduct a *de novo* review.  See Thomas v. Arn, 474 U.S. 140, 154 (1985); Cf. United States v. S. Tanks, Inc., 619 F.2d 54, 55 (10th Cir. 1980) ("Magistrates exercising their 'additional duties' jurisdiction pursuant to a district court's designation are nevertheless continuously subject to the inherent supervisory control of the district judge who retains ultimate decisional responsibility in every case.").

697 F.2d 188, 191 n.3 (7th Cir. 1983) (rejecting defendant's argument that trial

court erred in reversing order enforcing magistrate judge's decision to compel

disclosure of government's informant because magistrate's determination was not

clearly erroneous or contrary to law, stating: "[t]hese standards [in Section

636(b)(1)(A)], however, do not necessarily restrict district court review of a

magistrate's findings.  A magistrate makes recommendations to the district court.

That court then may satisfy itself that the recommended actions are fair and proper

by receiving additional evidence or conducting a full review.").  The legislative

history of 28 U.S.C. § 636(b)(1)(A) further supports that a court is not prohibited

from exercising its discretion to conduct a *de novo* review:

> Use of the words "may reconsider" in subparagraph (A) is intended to
> convey the congressional intent that a matter "heard and determined"
> by the magistrate need not in every instance be heard a second time by
> the judge.  However, if a party requests reconsideration based upon a
> showing that the magistrate's order is clearly erroneous or contrary to
> law then the judge must reconsider the matter.  *Of course, the judge
> has the inherent power to rehear or reconsider a matter sua sponte.*

H.R. Report No. 1609, 94th Cong., 2nd Sess. 9-11 (emphasis added); see also

Cipollone v. Liggett Group, Inc., 822 F.2d 335, 348 n.1 (3d Cir. 1987) (Garth, J.,

dissenting).  Plaintiff's Motion for Reconsideration is denied.[6]

---

[6]      Having found that the Court was entitled to exercise its discretion to review
*de novo* whether Plaintiff is similarly situated to the proposed class, Plaintiff's
argument that the Magistrate Judge did not clearly err in declining to consider the
Current Assistant Managers' Declarations, is moot.  Even if it were not moot, the

2.    <u>Motion to Supplement and the Second Rodriquez Declaration</u>

Plaintiff next requests, under the guise of a "Motion to Supplement the

Record on Conditional Certification," that the Court reconsider its June 23rd Order

in view of the "newly discovered" Second Rodriguez Declaration.[7]  Rodriguez was

known to Plaintiff, at the latest, on October 6, 2014, when Defendants submitted

the First Rodriguez Declaration with their brief opposing conditional certification

[20].  Plaintiff failed to interview Rodriguez during the discovery period and

Plaintiff otherwise fails to show why she waited until July 17, 2015—more than

three (3) weeks after the Court issued its June 23rd Order—to obtain the Second

Court already considered, and rejected, Plaintiff's argument that the Current
Assistant Managers' Declarations should not be considered at the first stage of the
conditional certification process, and it is not a proper basis for reconsideration.
<u>See</u> <u>Arthur</u>, 500 F.3d at 1343.  In its June 23rd Order, the Court rejected Plaintiff's
attempts to limit the scope of the Court's analysis and found that consideration of
the Current Assistant Managers' Declarations was "appropriate at this stage in the
litigation because the issues in this case—whether the duties Assistant Managers
perform are consistent with their categorical designation as exempt employees—
requires the Court to evaluate the day-to-day job duties the Assistant managers
actually performed." (June 23rd Order at 29-30).  The Court noted that it would be
required to consider the evidence at the later decertification stage, and that the
Eleventh Circuit has stated that a court may consider a defendant's "affidavits to
the contrary" in determining whether a plaintiff has met her burden to show that
she is similarly situated to proposed class members.  (<u>Id.</u>).  Plaintiff's Motion for
Reconsideration is denied for this additional reason.

[7]      The Court notes that, after obtaining the Second Rodriguez Declaration,
Plaintiff delayed nearly two (2) weeks—during which time the twenty-eight day
period within which to seek reconsideration expired—before she filed her Motion
to Supplement on July 28, 2015.  Plaintiff's Motion to Supplement is, in effect, an
untimely second motion for reconsideration of the Court's June 23rd Order, and
denial is warranted on this basis alone.  <u>See</u> LR 7.2(E), NDGa.

Rodriguez Declaration.[8]  The Second Rodriguez Declaration is not newly

discovered evidence and it is not properly before the Court.  See Arthur, 500 F.3d

at 1343-44 (evidence that could have been presented on the previously-filing

motion is not newly discovered); Mays v. U.S. Postal Serv., 122 F.3d 43, 46

(11th Cir. 1997) ("We join those circuits in holding that where a party attempts to

introduce previously unsubmitted evidence on a motion to reconsider, the court

should not grant the motion absent some showing that the evidence was not

available during the pendency of the motion.").

Even if the Second Rodriguez Declaration could be considered "newly

discovered" evidence, a close reading of the First and Second Rodriguez

Declarations shows that they are not inconsistent in any manner material to the

Court's findings and conclusions in its June 23rd Order.  In its June 23rd Order, the

Court considered the Current Assistant Managers' declarations and found that the

job duties they actually perform, and the time spent performing managerial versus

non-managerial duties, at least vary throughout the proposed class and, more

importantly, are different from the duties Plaintiff and Norman claim they

---

[8]     At a March 19, 2015, hearing before the Magistrate Judge, Plaintiff
requested to further extend discovery to take additional depositions.  The
Magistrate Judge, in his March 23, 2015, Order, permitted Plaintiff to file a brief in
support of her request, including to identify the additional depositions sought and
state why they are necessary and why she was unable to notice them or anticipate
needing them within the discovery period.  (March 23rd Order [102] at 3 n.1).
Plaintiff did not file a brief and it appears she abandoned her request.

performed.  In their declarations, Plaintiff and Norman assert that their "primary duties" were to prepare and cook the food, serve customers, and keep the restaurant clean, and that they were not authorized to hire or fire employees.  They state further that the duties they performed were governed by the policies and procedures contained in Defendants' manuals, and that they lacked discretion to vary from these policies and procedures.  (See June 23rd Order at 32-33).

The Current Assistant Managers' declarations showed that, while Assistant Managers perform Crew Member tasks such as cooking, serving customers and cleaning, they do so in their own discretion, for varying lengths of time, as means of managing, training and directing Crew Members, or when the restaurant is experiencing high volume or to ensure Crew members are performing their duties in accordance with the Restaurant's policies and procedures.  They also issue disciplinary warnings, make hiring and firing recommendations, and use their experience, judgment and discretion to create and manage Crew Members' schedules, and assign and direct Crew Members in performance of their duties. (See id. at 33-35).

Based on these declarations, the Court found that Plaintiff, Norman, and the Current Assistant Managers share the same job title, are paid a salary, and, for at least some portion of their workday, perform non-managerial duties such as

cooking, cleaning, and serving customers.  The Court concluded, however, that the job duties Assistant Managers actually perform, and the time spent performing managerial versus non-managerial duties, at least vary throughout the proposed class and, more persuasively, are different than the duties Plaintiff and Norman claim they performed, including because the Current Assistant Managers exercise significant discretion in determining Crew Members' work schedules, assigning Crew Members to specific workstations, and deciding when they themselves need to perform Crew Member duties as part of their broader managerial responsibilities.  The Court concluded:

> Without deciding whether they were misclassified, the Current Assistant Managers' Declarations . . . support that Plaintiff and Norman performed different day-to-day duties than the class of Assistant Managers Plaintiff seeks to represent.  Simply put, although Plaintiff and Norman may be similarly situated to each other, there is no evidence to support that they are similarly situated to the Current Assistant Managers.

(Id. at 37).

In his Second Declaration, Rodriguez now claims, over a year later,[9] that he had "the firm impression that [he] had no choice but to sign the [First D]eclaration

---

[9]    Rodriguez's First Declaration was based on his experience as an Assistant Manager at the Mt. Zion Restaurant from October 2013 to June 2014, and at the Riverdale Restaurant from June 2014 to July 1, 2014, the date of his declaration. (First Decl. ¶ 3).  In his Second Declaration, Rodriguez states that he is currently employed at the College Park Restaurant, and the Court notes that at some points it is not clear whether he is describing his current duties at the College Park

. . . whether [he] agreed with its contents or not," that he "did not understand

everything that was going on," and that "[t]here are a number of inaccurate

statements included in that declaration." (Second Decl. ¶¶ 16-18). A close reading

of the First and Second Rodriguez Declarations, however, shows that they are not

inconsistent in any manner that is material to whether Plaintiff was similarly

situated to the Current Assistant Managers. For example, Rodriguez now claims

that his statements in his First Declaration that he "coach[es] Crew Members on a

daily basis" and "[p]roved[es] leadership to Crew Members is a big part of [his]

job," are "inaccurate," because the Zaxby's manuals "govern just about every

---

Restaurant, or also duties in the past and at other locations. For example, in
Paragraph 8 of his First Declaration, Rodriguez states:

> *During my time as an Assistant Manager at SJAC Mt. Zion, I handled
> the hiring of Crew Members.* I pulled applications and selected
> individuals for interviews. I then conducted interviews and
> determined who should be hired. *I have not been as involved in the
> hiring process since I moved to SJAC Riverdale*, but I would be able
> [to] make hires again if there was a need for me to.

(Id. ¶ 8) (emphasis added). In his Second Declaration, Rodriguez now claims:
> Paragraph 8 [of his First Declaration] is also incorrect. *I do not have
> authority to hire employees.* There were occasions when I was asked
> to join the General Manager to interview a potential employee. I do
> not dispute that I was allowed to ask questions during those
> interviews. However, the General Manager would interview the
> applicant alone, after our joint interview, and the General Manager
> made the hiring decisions.

(Second Decl. ¶ 23) (emphasis added). That Rodriguez does not have authority to
hire employees at the College Park Restaurant is consistent with another Current
Assistant Manager's statement that she did not have authority to hire employees at
the College Park Restaurant. (See Kimberly Lawson Decl. [20.1 at 56-58] ¶ 9).

aspect of the restaurant's operations." (Second Decl. ¶ 20). That Rodriguez states in his Second Declaration that he "check[s] on the other employees and crew member[s] to make sure they are following the detailed practices and procedures set forth in Zaxby's manuals," is consistent with his previous statement about coaching Crew Members and providing leadership. Rodriguez's statements are also consistent with other Current Assistant Managers' testimony that they ensure that Crew Members are performing their duties in accordance with the Restaurant's policies and procedures. (See, e.g., McThay Decl. ¶ 6; LafFleur Decl. ¶ 4; Kyle Decl. ¶ 3; Hightower Decl. ¶ 3; Borden ¶ 3).[10]

In his First Declaration, Rodriguez also states that his "duties primarily concern running the daily operations of [the] store," that he "give[s] Crew

---

[10]      It is not surprising that a franchise restaurant would have detailed manuals governing its operations and require all employees—managerial and non-managerial alike—to adhere to those procedures. That Defendants have detailed instructions and guidelines does not mean that employees never exercise discretion or independent judgment. See Donovan v. Burger King Corp., 675 F.2d 516, 521-522 (2d Cir. 1982) (assistant managers in fast food restaurants exercised discretion sufficient for managerial exemption even though their duties were "circumscribed by prior instruction" and "detailed guidelines;" although "adherence by assistant managers to a remarkably detailed routine is critical to commercial success," "judgments must still be made" because "the wrong number of employees, too many or too few supplies on hand, delays in service, the preparation of food which must be thrown away, or an underdirected or undersupervised work force all can make the difference between commercial success and failure"); Roe-Midgett v. CC Servs., Inc., 512 F.3d 865, 875 (7th Cir. 2008) (claims adjusters exercised discretion even though manuals and estimating software guided their work; finding "independent judgment is not foreclosed by the fact that an employee's work is performed in accordance with strict guidelines").

Members direction throughout [his] shifts," and that he "enjoy[s] discretion in placing Crew Members at the posts where [he] believe[s] they should be placed." (First Decl. ¶ 3).  In his Second Declaration, Rodriguez now claims that he is "partly responsible for making sure that the customers are satisfied with their food and service," but his "primary duties are to cook and serve the food and to make sure that the restaurant is clean."  (Second Decl. ¶ 19)  Rodriguez also states that, although he performs some administrative tasks, they take less than an hour to complete.  (Id.).  Rodriguez does not, however, disclaim his role in scheduling Crew Members' work hours and determining their work stations based on his assessment of their skills and performance.  (See First Decl. ¶¶ 3-5).  That Rodriguez now claims that he "spend[s] the majority of [his] time preparing food and servicing [sic] customers," is consistent with the varying amount of time other Current Assistant Managers spend performing these non-managerial tasks.

The First and Second Rodriguez Declarations support that the tasks Assistant Managers perform, and time spent doing so, vary from store to store, and from Assistant Manager to Assistant Manager.  Simply put, nothing in the Second Rodriguez Declaration impacts the Court's finding that "although Plaintiff and Norman may be similarly situated to each other, there is no evidence to support that they are similarly situated to the Current Assistant Managers."  (June 23rd

Order at 37).  The Second Rodriguez Declaration does not provide a basis for the Court to reconsider its June 23rd Order.  Plaintiff's Motion to Supplement, and her Motion for Reconsideration, are denied.

          3.     <u>Motion to Exclude  and Request for Attorneys' Fees and Costs</u>

      Having denied Plaintiff's Motion to Reconsideration and Motion to Supplement, the Court does not reach the merits of Defendants' argument that the Second Rodriguez Declaration is a sham affidavit, and Defendants' "Motion to Exclude the Second Rodriguez Declaration is denied as moot.

      In their Motion to Exclude, Defendants also seek an award of attorneys' fees and costs, under 28 U.S.C. § 1927, against Plaintiff's counsel for filing the Motion to Supplement.  28 U.S.C. § 1927 authorizes an award of "excess costs, expenses and attorneys' fees reasonably incurred because of" conduct that "so multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  "[A]n attorney multiples proceedings unreasonably and vexatiously within the meaning of [§ 1927] only when the attorney's conduct is so egregious that it is tantamount to bad faith."  <u>Amlong & Amlong, P.A. v. Denny's, Inc.</u>, 500 F.3d 1230, 1239 (11th Cir. 2007).

      Here, Plaintiff's counsel failed to interview Rodriguez during the discovery period and did not show why they waited until July 17, 2015, to obtain the Second

Rodriguez Declaration.  It is troubling that, more than three (3) weeks after the Court issued its June 23rd Order, Plaintiff's counsel procured the Second Rodriguez Declaration, solely in the hope that it would cast doubt on the other twelve (12) declarations and cause the Court to reconsider its denial of conditional certification.[11]  That counsel waited nearly two (2) more weeks—during which time the twenty-eight day period within which to seek reconsideration expired—to file the Motion to Supplement, based on the "newly discovered" Second Rodriguez Declaration, further delayed the processing of this case.  The conduct of Plaintiff's counsel—and indeed, much of the conduct of all of the attorneys involved

---

[11]     Most of the Second Rodriguez Declaration, and Plaintiff's Motion to Supplement, focus on whether Rodriguez and the other Current Assistant Managers were "properly informed of the instant dispute and their rights to join this case."  In its June 23rd Order, the Court specifically addressed this argument:

> To the extent Plaintiff argues that the Court should not consider the Current Assistant Managers' declarations because the declarants do not state whether they received "a full disclosure about this case and that the information provided was provided voluntarily and not under duress," the Court considers only the declarants' statements regarding their job duties, to evaluate whether they and Plaintiff are similarly situated.

(June 23rd Order at 30 n.10).  That the Court declined to conditionally certify this as a collective action does not affect the ability of an employee to prosecute, in their own name, claimed FLSA violations.  Plaintiff's counsel's argument that, because one of the thirteen (13) Current Assistant Mangers now claims that his First Declaration contains "inaccurate statements" and he felt "pressured" to sign it, "the rest of Defendant's declarations are so inherently unreliable" that the Court should disregard them and grant conditional certification, shows counsel's myopic view of this litigation and supports that their focus consistently has been expanding this case into a collective action, rather than prosecuting Plaintiff's relatively straightforward claims.

throughout this litigation—shows suspect professional judgment and has unnecessarily burdened the parties and the Court.  The Court concludes, albeit reluctantly, that the record is not sufficient to support that Plaintiff's counsel "unreasonably and vexatiously" multiplied the proceedings, or acted in bad faith, by filing the Motion to Supplement.  See 28 U.S.C. § 1927; Amlong, 500 F.3d at 1239; see also Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001) (court has the inherent power to impose sanctions against attorneys or clients, or both, who act "'in bad faith, vexatiously, wantonly, or for oppressive reasons'") (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008). Defendants' request for attorneys' fees and costs, contained in its Motion to Exclude, is denied.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration [143], and Motion to Supplement the Record on Conditional Certification [145], are **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Exclude or in the Alternative Motion to Strike the July 17, 2015, Declaration of Jonathan Rodriguez [148] is **DENIED**.

**SO ORDERED** this 24th day of February, 2016.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE